**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ATLANTIC CITY LINEN SUPPLY, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| THE UNITED STATES SMALL | ) | |
| BUSINESS ADMINISTRATION and | ) | |
| ISABELLA CASILLAS GUZMAN in her | ) | |
| official capacity as Administrator of the | ) | |
| United States Small Business Administration | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Atlantic City Linen Supply, LLC ("Atlantic City"), by counsel, for its Complaint for Declaratory Relief against Defendants, the United States Small Business Administration ("SBA") and Isabella Casillas Guzman ("Guzman" or the "Administrator") in her official capacity as the Administrator of the SBA, states as follows:

### INTRODUCTION

1.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") (Pub. L. 116-136) was signed into law to provide emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic.

2.     In passing the CARES Act, Congress authorized the SBA to modify existing loan programs and establish a new loan program to assist businesses nationwide — the Paycheck Protection Program (hereinafter, the Paycheck Protection Program may also be referred to as "PPP").

3.     The Paycheck Protection Program was designed to provide a direct incentive for businesses to keep their workers on payroll by providing loans to fund payroll costs.

4.    As business operations across a wide variety of sectors slowed, certain key industries, including hotels, the hospitality industry, restaurants, manufacturing, and associated businesses, were hit particularly hard — and immediately began to lay off employees due to drastically-reduced income.

5.    Atlantic City's business operations are focused on providing laundry and linen management services to the hotel and hospitality industry. Indeed, Atlantic City functions as the laundry and linen management department of the hotels it serves.

6.    Atlantic City provides significant and unique services without which a hotel cannot operate. For instance, Atlantic City: reviews a hotel's existing linen inventory and seeks to understand the hotel's expectations from a budgetary and guest-experience perspective; regularly advises the hotel if adjustments are needed to the hotel's linen par levels (*i.e.*, the amount of linen needed for the size of the hotel property); and assists the hotel in its development of linen replacement budgets by providing shrinkage/linen loss, wear and tear forecasts and other pertinent data.

7.    Given the integral role Atlantic City serves in the hotel and hospitality industry, the onset of the coronavirus pandemic devastated its revenue stream — placing its employees at significant risk of lay off.

8.    In an effort to ensure that businesses like Atlantic City, *i.e.*, hotels, the hospitality industry, and associated businesses, survived the devastating impacts of the pandemic, Congress unambiguously expressed its intent to expand the criteria for businesses eligible for PPP loan proceeds to entities assigned a North American Industry Classification System ("NAICS") Code beginning with "72," which is the "Accommodation and Food Services Sector."

9.      NAICS was developed in 1997 by the United States, Mexico, and Canada to create and maintain a common industry classification system and is revised every five years to keep the classification system current with changes in economic activities. The NAICS Code Manual authorizes businesses to self-assign a NAICS Code that the business determines to be appropriate for the nature of its operations.

10.     During the relevant time period, the 2017 NAICS Code Manual described businesses associated with a NAICS Code 72 as entities providing short-term lodging in hotels, motor hotels, resort hotels, and motels, including those that may offer food and beverage services, recreational services, conference rooms, convention services, laundry services, parking, and other services.

11.     Per the 2017 NAICS Code Manual, entities that provide hotel management services (*i.e.*, providing management and operating staff to run hotels) may appropriately self-assign NAICS Code 72. At the time the CARES Act was passed, Atlantic City carefully assessed the nature of its business operations against the express congressional mandate to expand eligibility for Paycheck Protection Program loans to businesses self-assigned a NAICS Code beginning with 72.

12.     In early 2020, Atlantic City was not simply a commercial laundry service provider — it provided hotel management services. Indeed, Atlantic City was (and is) the lifeblood of hotel and hotel management, exclusively providing consultation and management services to its hotel clients in connection with the linens essential to hotel operations.

13.     In an effort to understand the parameters of Congress' decision to expand the Paycheck Protection Program to businesses self-assigned NAICS Code 72, Atlantic City sought

and obtained advice from legal counsel based in the District of Columbia with extensive experience in the assessment of congressional legislation.

14.    Counsel for Atlantic City did a thorough analysis of the nature of its business and advised that a NAICS Code beginning with 72 was appropriate for Atlantic City based on the nature of its business. In reliance on such advice, Atlantic City self-assigned NAICS Code 72.

15.    As an entity self-assigned a NAICS Code beginning with 72 — specifically, 721110 — Atlantic City applied for and received a Second Draw PPP Loan in the amount of $925,000.00 to assist in keeping its employees on payroll and business operations running on or around May 13, 2021.

16.    As authorized by the CARES Act, Atlantic City submitted an application for forgiveness of its PPP loan on or around March 16, 2022.

17.    On or around March 16, 2023, the SBA issued its final loan review decision denying Atlantic City's application for loan forgiveness for the sole reason that the SBA disagreed with Atlantic City's NAICS Code beginning with 72 and believed that it should instead have a NAICS Code beginning with 81.

18.    The SBA arbitrarily exceeded the authority delegated to it by Congress when it disagreed with Atlantic City's self-selected NAICS Code and thereby concluded that Atlantic City was not eligible for forgiveness of its PPP loan. Congress did not empower the SBA to reject a borrower's self-selected NAICS Code and use that as a basis to deny eligibility for PPP loans.

19.    This action under the Administrative Procedure Act ("APA") seeks a declaratory judgment that the SBA's denial of Atlantic City's application for forgiveness of its Second Draw PPP Loan was erroneous.

## JURISDICTION AND VENUE

20.     This case arises under the APA, 5 U.S.C. § 701, *et seq*. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 634(b)(1).

21.     The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

22.     Atlantic City's claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202, 5 U.S.C. §§ 702-706, Federal Rule of Civil Procedure 57, and by the inherent equitable powers of this Court.

23.     The agency actions at issue constitute final decisions and/or actions of the SBA that are reviewable by this Court pursuant to 13 C.F.R. § 134.1211(g). In so reviewing, this Court "must exercise [its] independent judgment in deciding whether [the SBA] has acted within its statutory authority, as the APA requires." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

24.     Atlantic City exhausted all available administrative remedies by appealing the SBA's final decision to the SBA's Office of Hearings and Appeals ("OHA") as required by 13 C.F.R. § 134.1201(d).

25.     On or around July 14, 2023, the administrative law judge assigned to the OHA appeal issued a final decision affirming the SBA's denial of Atlantic City's application for forgiveness of its Second Draw PPP Loan.

26.     Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because Atlantic City's principal place of business is located in Atlantic County, New Jersey.

## PARTIES

27.    Atlantic City is a New Jersey corporation, and its principal place of business is located at 18 N. New Jersey Avenue, Atlantic City, New Jersey 08401 in Atlantic County, New Jersey. Accordingly, Atlantic City is a citizen of the state of New Jersey.

28.    The SBA is a federal government agency within the meaning of 5 U.S.C. § 701, *et seq.*

29.    Guzman is the current Administrator of the SBA as set forth in 15 U.S.C. § 637c. This action is brought against Guzman in her official capacity as the Administrator of the SBA.

30.    Pursuant to 15 U.S.C. § 634(b)(1), Guzman may be sued in her official capacity "in any United States district court, and jurisdiction is conferred upon such district court," with respect to any matters concerning "the functions, powers, and duties vested in" Guzman as the Administrator of the SBA.

31.    15 U.S.C. § 703 authorizes this action to be brought against the SBA and Guzman in her capacity as the Administrator of the SBA.

## FACTUAL BACKGROUND

### First and Second Draw Loans Under the Paycheck Protection Program

32.    The CARES Act amended 15 U.S.C. § 636(a) to temporarily include provisions implementing the Paycheck Protection Program. *See* 15 U.S.C. § 636(a).

33.    The Paycheck Protection Program is a temporary SBA 7(a) loan program designed to guarantee loans to provide financial relief to businesses impacted by the COVID-19 pandemic.

34.    Section 1102 of the CARES Act temporarily permitted the SBA to guarantee one hundred percent (100%) of 7(a) loans under the Paycheck Protection Program to eligible

businesses. Likewise, Section 1106 of the Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program.

35.    Section 1102(b) of the CARES Act significantly expanded eligibility for a wide array of businesses and organizations:

> During the covered period, any business concern, private nonprofit organization, or public nonprofit organization which employs not more than 500 employees shall be eligible to receive a loan made under section 7(a) of the Small Business Act (15 U.S.C. 636(a)), in addition to small business concerns.

36.    Congress included in the Paycheck Protection Program a number of avenues through which a borrower could be eligible for a covered loan. *See, e.g.*, 15 U.S.C. § 636(a)(36)(D) (entitled, "Increased eligibility for certain small businesses and organizations").

37.    Congress authorized third-party lenders to make and approve these "covered loans" to eligible entities under the Paycheck Protection Program. With respect to eligibility for these First Draw Loans, Congress further instructed such lenders to focus on whether eligible borrowers (i) were in operation as of February 15, 2020; and (ii) had paid employees. *See* 15 U.S.C. § 636(a)(36)(F)(ii).

38.    Pursuant to 15 U.S.C. § 636m(b), borrowers who received First Draw PPP Loans were entitled to complete loan forgiveness if certain conditions were satisfied.

39.    After enactment of the CARES Act, the SBA issued a number of Interim Final Rules implementing changes relating to loans made under the Paycheck Protection Program and clarifying the program parameters. The SBA published these Interim Final Rules in the Federal Register between April 15, 2020 and September 16, 2021.

40.    In its first Interim Final Rule concerning the Paycheck Protection Program published on or about April 15, 2020, the SBA announced the implementation of sections 1102 and 1106 of the CARES Act:

The intent of the [CARES] Act is that SBA provide relief to America's small business expeditiously, **which is expressed in the [CARES] Act by giving all lenders delegated authority and streamlining the requirements of the regular 7(a) loan program**. For example, for loans made under the PPP, SBA will not require the lenders to comply with [13 C.F.R §] 120.150 "What are SBA's lending criteria?" SBA will allow lenders to rely on certifications of the borrower in order to determine eligibility of the borrower and use of loan proceeds and to rely on specified documents provided by the borrower to determine qualifying loan amount and eligibility for loan forgiveness.

85 FR 20812 (emphasis added).

41.    Given the urgent need for government assistance to domestic business operations, the first Interim Final Rule acknowledged that all "program requirements of the PPP identified in th[e] rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)." *Id*.

42.    The first Interim Final Rule further outlined certain eligibility requirements for the Paycheck Protection Program:

2. What do borrowers need to know and do?

a. Am I eligible?

You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:

i. You are:

A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) **unless specifically waived in the [CARES] Act** . . . .

*Id*. (emphasis added).

43.    On or around April 15, 2020, the SBA articulated the parameters of its "affiliation rules" in another Interim Final Rule (hereinafter, the "Affiliation Interim Final Rule"). *See* 85 FR 20817.

44.     In relevant part, the Affiliation Interim Final Rule provided that an entity is generally eligible for the PPP if it, combined with its affiliates, has five hundred (500) or fewer employees. *See id.*

45.     As set forth above, because Congress aimed to expand eligibility for businesses and organizations financially impacted by the pandemic, the CARES Act waived certain eligibility criteria customarily associated with the 7(a) loan program.

46.     For instance, Congress unambiguously expressed its intent to distinguish and expand eligibility criteria by establishing a waiver for "any business concern that employs not more than 500 employees per physical location of the business concern and that **is assigned a North American Industry Classification System code beginning with 72** at the time of disbursal . . . . " *See* 15 U.S.C. § 636(a)(36)(D)(iii) (emphasis added).

47.     The Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act (the "Economic Aid Act") (Pub. L. 116-260) subsequently expanded the Paycheck Protection Program by adding to 15 U.S.C. § 636(a) provisions authorizing the issuance of Second Draw Paycheck Protection Program loans. Section 311 of the Economic Aid Act added a second temporary program to SBA's 7(a) Loan Program entitled, "Paycheck Protection Program Second Draw Loans."

48.     Under Section 311, the SBA may guarantee loans under the PPP Second Draw Program to borrowers that previously received a First Draw PPP Loan and have used or will use the full amount of the initial PPP loan for authorized purposes on or before the expected date of disbursement of the Second Draw PPP Loan.

49.     Second Draw Loans were generally guaranteed by SBA under the same terms, conditions, and processes as First Draw PPP Loans.

50.     An entity is generally eligible for a Second Draw PPP Loan if it, combined with its affiliates, has three hundred (300) or fewer employees and experienced a revenue reduction in 2020 relative to 2019.

51.     In connection with the Paycheck Protection Program, the SBA issued regulations providing a framework through which a PPP borrower could administratively appeal an adverse decision issued by the SBA concerning, *inter alia*, eligibility and loan forgiveness decisions. 13 C.F.R. § 134.1201, *et seq*.

52.     If a borrower who received a First or Second Draw PPP Loan applied for, but was denied, loan forgiveness by the SBA, the borrower could appeal the SBA's decision through the SBA's OHA procedural framework. *See* 13 C.F.R. § 134.1201(b).

### The SBA Approves Atlantic City's Requests for First and Second Draw PPP Loans

53.     As with many businesses nationwide, Atlantic City was materially and adversely affected by the COVID-19 pandemic.

54.     Accordingly, on or about April 10, 2020, Atlantic City applied for a First Draw PPP Loan to its lender, Zions Bancorporation, N.A. ("Zions Bank"), and used all of the First Draw Loan proceeds for authorized purposes.

55.     Atlantic City applied for and received forgiveness of its First Draw Loan.

56.     Atlantic City experienced a revenue reduction in 2020 relative to 2019 and thus, on or about May 3, 2021, it submitted an application for a Second Draw PPP Loan to Zions Bank.

57.     At the time Atlantic City applied for the Second Draw PPP Loan, it had fewer than three hundred (300) employees per physical location and was assigned a NAICS Code beginning with 72. Thus, Atlantic City met the eligibility criteria for Second Draw PPP loans.

58.     Atlantic City's Second Draw PPP application included its NAICS Code of 721110.

59.    On or about March 30, 2021, Zions Bank and/or the SBA subsequently approved Atlantic City for a Second Draw PPP Loan in the amount of $925,000.00. Zions Bank disbursed the funds to Atlantic City on or about May 13, 2021.

60.    Atlantic City had used all First Draw Loan proceeds for authorized purposes well before May 13, 2021.

61.    Thereafter, Atlantic City used all of the Second Draw PPP Loan proceeds to pay expenses and costs authorized by 15 U.S.C. § 636(a)(37)(J)(iii).

62.    Atlantic City did not use any of the Second Draw PPP Loan proceeds in any manner that was not expressly permitted under 15 U.S.C. § 636(a)(37)(J)(iii).

63.    Thereafter, on or around March 16, 2022, Atlantic City submitted its application for forgiveness of the PPP Loan (the "Loan Forgiveness Application").

64.    Zions Bank issued a decision to forgive the full amount of the Second Draw Loan on March 18, 2022.

65.    Beginning on or around June 1, 2022, the SBA undertook multiple reviews of Atlantic City's Second Draw PPP Loan.

66.    On or about October 27, 2022, the SBA issued a final loan review decision denying Atlantic City's Loan Forgiveness Application. Specifically, the SBA erroneously found that Atlantic City did not qualify for an affiliation waiver:

SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.

67.    Atlantic City received the SBA's final loan review decision on or about October 27, 2022.

**Atlantic City Appeals the SBA's Initial Final Loan Review Decision
and the SBA Withdraws its Final Loan Review Decision**

68.     On or about November 28, 2022, Atlantic City initiated a timely appeal to the OHA
(the "First OHA Appeal") of the SBA's denial of Atlantic City's Second Draw Loan Forgiveness
Application.

69.     In the First OHA Appeal, Atlantic City argued that because it was assigned NAICS
Code 721110 at the time of disbursement, the SBA erroneously determined that Atlantic City did
not meet eligibility requirements for the Second Draw PPP Loan because it "exceed[ed] the
maximum allowable number of employees."

70.     Atlantic City also argued that the SBA mistakenly relied on an entry in "ETRAN"
stating that Atlantic City had a NAICS Code beginning with 81.

71.     Despite the SBA's findings, Atlantic City was assigned NAICS Code 721110 at the
time its Second Draw PPP Loan proceeds were disbursed.

72.     Indeed, NAICS Code 721110 was the primary business activity code identified on
Atlantic City's corresponding federal income tax returns for the years 2019, 2020, and 2021.[1]

73.     Congress did not authorize the SBA to review and second-guess a borrower's
self-selected NAICS Code. The SBA thus exceeded its statutory authority when it rejected the
NAICS Code selected by Atlantic City based upon the nature of its business and revenue source.

74.     The SBA's denial of Atlantic City's Second Draw Loan Forgiveness Application
and determination that Atlantic City was not eligible for the Second Draw PPP Loan were
predicated upon an incorrect factual basis.

---

[1] Atlantic City is a single member LLC which is wholly owned by AMCP Clean Subsidiary Holdco LLC ("AMCP
Holdco"). During the relevant time period, Atlantic City elected to be taxed as a partnership. As such, Atlantic City
does not directly file federal income tax returns (i.e. Atlantic City is "disregarded" and its income and expenses are
"passed through" to AMCP Holdco and reported on its tax returns. AMCP Holdco's 2019, 2020, and 2021 federal tax
returns identify it as having a NAICS Code of 721110).

75.     After Atlantic City filed with the OHA its Appeal Petition, the SBA withdrew the October 27, 2022 final loan review decision.

76.     On or about January 27, 2023, the SBA moved to dismiss the First OHA Appeal based on its withdrawal of the loan review decision. An OHA Administrative Law Judge ("ALJ") granted the SBA's motion to dismiss, as the OHA only has jurisdiction over cases where a final loan review decision has been made.

77.     On or about March 16, 2023, the SBA issued a second final loan review decision denying Atlantic City's Loan Forgiveness Application.

78.     Despite the numerous errors in the SBA's initial loan review decision, the substantive findings in the SBA's second final loan review decision remained largely unchanged.

79.     The SBA's decision was based on the erroneous finding that Atlantic City "exceed[ed] the maximum allowable number of employees and the SBA small business size standards," which was based on an inaccurate conclusion that Atlantic City could not have a NAICS Code beginning with 72.

80.     Notwithstanding the lack of any Congressional authority to independently determine which NAICS Code is appropriate for PPP loan applicants, the SBA independently determined — contrary to the evidence contained in the administrative record — that Atlantic City's "primary industry" was associated with NAICS 812331 and that because Atlantic City "provides services to the hospitality industry, but is not in the hospitality industry," the company does not qualify for a NAICS Code 72 waiver.

81.     The SBA did not have the authority to engage in independent assessments of Atlantic City's business or issue final loan review decisions which deviate from the administrative record.

82.     Atlantic City received the final loan review decision on March 20, 2023.

**Atlantic City Appeals the SBA's Final Loan Review Decision a Second Time, and the OHA ALJ Affirms the SBA's Final Decision to Deny Second Draw PPP Loan Forgiveness**

83.     As set forth above, Atlantic City is not simply a commercial laundry service provider. Atlantic City's business operations are focused on providing laundry and linen management services to the hotel and hospitality industry.

84.     The SBA's March 16, 2023 final loan review decision not only reflected a grave misunderstanding of Atlantic City's business operations, but contravened congressional intent to expand the Paycheck Protection Program to businesses – like Atlantic City – devastated by the coronavirus pandemic.

85.     On or about April 19, 2023, Atlantic City initiated a second timely appeal of the SBA's denial of Atlantic City's Second Draw Loan Forgiveness Application to the OHA (the "Second OHA Appeal").

86.     In the Second OHA Appeal, Atlantic City again argued that the SBA incorrectly determined that Atlantic City had a NAICS Code beginning with 81.

87.     Once again, the SBA's decision to deny loan forgiveness was predicated upon a determination that the total number of employees "exceeded the maximum allowable number of employees" and that Atlantic City was not eligible for the NAICS Code 72 waiver provided in the CARES Act.

88.     The SBA further incorrectly determined that Atlantic City was ineligible for a NAICS Code waiver because its "primary industry" was linen service — not hotels and restaurants.

89.     Despite undertaking additional reviews, the SBA failed to accurately review and assess additional documents and key information provided by Atlantic City concerning critical

aspects of its revenue sources and business operations directly involving hotel management-related services — all of which justified its classification as a NAICS Code 72 entity.

90.    Atlantic City further argued in its Second OHA Appeal that Congress provided for specific eligibility of businesses associated with NAICS Codes beginning with 72 because such entities were particularly hard-hit by the coronavirus pandemic.

91.    The intent of Congress was to help employees such as those of Atlantic City by providing their employers with PPP loan funds with which to keep them employed.

92.    The SBA filed the administrative record on or about May 29, 2023, but did not respond to the Second OHA Appeal Petition.

93.    On or about July 14, 2023, the administrative law judge assigned to the Second OHA Appeal issued a decision affirming the SBA's denial of Atlantic City's Loan Forgiveness Application.

94.    Specifically, the ALJ found that the administrative record was "unclear" regarding whether Atlantic City was assigned a NAICS Code at the time the Second Draw PPP Loan was disbursed.

95.    Likewise, the ALJ, "[a]ssuming [Atlantic City's] 2018 and 2019 revenue sources were similar," determined that assignment of NAICS Code 812331 would have been appropriate . . . . " and thus, employing a clear error standard, found "sufficient evidence to support" the SBA's conclusion that Atlantic City did not qualify for the NAICS 72 waiver.

96.    With respect to Atlantic City's argument that Congress intended to expand eligibility for businesses in the hotel and hospitality industry (like Atlantic City) and that it should benefit from such congressional intent, the ALJ noted that the argument "has appeal," but that the decision is limited to whether the final loan review decision is "based on clear error of law or fact."

97.     Ultimately, the ALJ affirmed the entirety of the SBA's final loan review decision concerning Atlantic City's Second Draw PPP Loan, concluding that Atlantic City was not entitled to any forgiveness of the Second Draw PPP Loan.

98.     Atlantic City did not seek reconsideration of the ALJ decision issued in the OHA Appeal, nor did the Administrator elect to review and/or reverse the ALJ's decision.

99.     Pursuant to 13 C.F.R. § 134.1211(d), the ALJ's decision became the final decision of the SBA on or about August 14, 2023, and is ripe for this Court's review.

## COUNT I
## VIOLATION OF THE APA: 5 U.S.C. § 706(2)(A)

100.    Atlantic City hereby incorporates by reference all preceding paragraphs as if fully stated herein.

101.    Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

102.    The CARES Act specified clear eligibility criteria for PPP borrowers.

103.    Indeed, through the CARES Act, Congress unambiguously expressed a waiver for "any business concern that employs not more than 300 employees per physical location of the business concern and that is assigned a North American Industry Classification System code beginning with 72 at the time of disbursal . . . . " *See* 15 U.S.C. §§ 636(a)(37)(D)(iii) and 636(a)(37)(D)(ii).

104.     Congress did not authorize the SBA to deny PPP loan eligibility or forgiveness based upon unilateral disagreement with a borrower's self-selected NAICS Code.

105.    Instead, Congress passed the CARES Act to keep American workers employed by providing loans to cover payroll costs at a time that businesses were suffering and could not otherwise keep employees employed.

106.    As an integral part of the hotel and hospitality industry, Atlantic City's business was devastated by the coronavirus pandemic and, but for the CARES Act and its PPP loan program, its employees would have been furloughed.

107.    At the time Atlantic City applied for a Second Draw PPP Loan, it had fewer than three hundred (300) employees per physical location and had a NAICS Code beginning with 72. Thus, Atlantic City met the eligibility criteria established by Congress for a Second Draw PPP Loan.

108.    Despite its eligibility for Second Draw PPP Loan proceeds, the SBA denied Atlantic City's Loan Forgiveness Application.

109.    The SBA's decision to deny Atlantic City's Loan Forgiveness Application contravenes Congressional intent to provide financial assistance to businesses hard-hit by the COVID pandemic, including Atlantic City.

110.    Rather than relying on the CARES Act, the SBA relied upon factors and/or criteria which Congress did not intend for the SBA or Administrator to consider — and refused to apply the affiliation waiver to Atlantic City.

111.    The CARES Act should not be interpreted utilizing the SBA's "individual policy preferences," but instead a Court must interpret it using the "traditional tools of statutory interpretation." *See Loper Bright*, 144 S. Ct. at 2268. In assessing the APA, the "role of the reviewing court" is to "effectuate the will of Congress subject to constitutional limits." *See id*. at 2263. Accordingly, given Congress' express intent to expand the CARES Act to businesses

self-assigned NAICS Code 72, the SBA's denial of Atlantic City's Second Draw PPP Loan Forgiveness Application and the SBA's determination that Atlantic City was not eligible for the Second Draw PPP Loan are arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law.

**COUNT II**
**VIOLATION OF THE APA: 5 U.S.C. § 706(2)(C)**

112. Atlantic City hereby incorporates by reference all preceding paragraphs as if fully stated herein.

113. Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action, findings, and conclusions found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(D).

114. For the reasons alleged above, the SBA's action, findings, and conclusions are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(D).

115. Furthermore, in concluding that Atlantic City should have a NAICS Code of 812331, the SBA and the Administrator exceeded the authority granted by Congress and failed to give effect to the unambiguously expressed intent of Congress. Nothing in the CARES Act authorized the SBA to second-guess a reasonable and factually supported NAICS Code self-selected by the borrower.

116. The SBA and the Administrator's reliance upon their own formal and/or informal agency rules, regulations, and policies in unilaterally second-guessing Atlantic City's NAICS Code selection and denying Atlantic City's Second Draw Loan Forgiveness Application and reach a determination that Atlantic City was ineligible for the Second Draw PPP Loan was in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right.

117.    Accordingly, the SBA's denial of Atlantic City's Second Draw PPP Loan Forgiveness Application and the SBA's determination that Atlantic City was not eligible for the Second Draw PPP Loan was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

**COUNT III**
**VIOLATION OF THE APA: 5 U.S.C. § 706(2)(D)**

118.    Atlantic City hereby incorporates by reference all preceding paragraphs as if fully stated herein.

119.    Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action, findings, and conclusions found to be "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

120.    For the reasons alleged above, the SBA's action, findings, and conclusions are "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

121.    Indeed, despite undertaking multiple reviews, the SBA ignored documentation provided by Atlantic City supporting its self-selection of NAICS Code 721110. As an integral part of the hotel and hospitality industry, a NAICS Code of 721110 was reasonable and consistent with the NAICS Code Manual. Having such NAICS Code entitled Atlantic City to both receive a PPP loan and receive full forgiveness of that loan.

122.    Accordingly, the SBA's denial of Atlantic City's Second Draw Loan Forgiveness Application and determination that Atlantic City was not eligible for the Second Draw PPP Loan was predicated upon the SBA's improper decision to second guess the documentation submitted by Atlantic City advising the SBA that its NAICS Code is 721110.

123.    The SBA's denial of Atlantic City's Second Draw PPP Loan Forgiveness Application and the SBA's determination that Atlantic City was not eligible for the Second Draw PPP Loan was not conducted in observance of procedure required by law.

**COUNT IV**
**VIOLATION OF THE APA: 5 U.S.C. § 706(2)(E)**

124.    Atlantic City hereby incorporates by reference all preceding paragraphs as if fully stated herein.

125.    Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action, findings, and conclusions found to be "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E).

126.    For the reasons alleged above, the SBA's actions, findings, and conclusions are "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E).

127.    The SBA's denial of Atlantic City's Second Draw Loan Forgiveness Application and determination that Atlantic City was not eligible for a Second Draw PPP Loan is not supported by the administrative record.

128.    Accordingly, the SBA's denial of Atlantic City's Second Draw PPP Loan Forgiveness Application and the SBA's determination that Atlantic City was not eligible for the Second Draw PPP Loan was unsupported by substantial evidence.

**COUNT V**
**DECLARATORY JUDGMENT**

129.    Atlantic City hereby incorporates by reference all preceding paragraphs as if fully stated herein.

130.    An actual controversy exists between the parties regarding the SBA's decision to deny forgiveness of Atlantic City's Second Draw PPP Loan.

131.    The SBA's denial of forgiveness of Atlantic City's Second Draw PPP loan is contrary to the terms and conditions set forth in the Paycheck Protection Program, arbitrary and capricious, and an abuse of the SBA's discretion in administering the PPP. *See* 5 U.S.C. § 706(2)(A).

132.    Atlantic City is entitled to a judgment declaring that the SBA's denial of forgiveness of its Second Draw PPP Loan was legal error, arbitrary and capricious, and an abuse of the SBA's discretion.

133.    Atlantic City is entitled to a judgment vacating and reversing the SBA's final loan review decision denying forgiveness of its Second Draw PPP loan and the subsequent OHA decision denying Atlantic City's administrative appeal. Atlantic City is further entitled to a judgment ordering the SBA to fully forgive Atlantic City's Second Draw PPP Loan.

### RELIEF REQUESTED

WHEREFORE, Atlantic City respectfully requests that the Court enter judgment in its favor and:

(i) Hold unlawful and set aside the SBA's denial of Atlantic City's Loan Forgiveness Application and determination that Atlantic City was not eligible for a Second Draw PPP Loan;

(ii) Declare that the SBA exceeded the authority delegated to it by Congress when it determined that Atlantic City did not (and could not) have a NAICS Code beginning with 72 and thus was not eligible for a waiver of the affiliation rules, rendering the SBA's decision arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

(iii) Declare that the SBA and the Administrator's reliance upon their own formal and/or informal agency rules, regulations, and policies to deny Atlantic City's Second Draw Loan Forgiveness Application and reach a determination that Atlantic City was ineligible for a Second

Draw PPP Loan was in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right;

(iv) Declare that the rules, regulations, and policies relied upon by the SBA to deny Atlantic City's Second Draw Loan Forgiveness Application and determine that Atlantic City was purportedly ineligible for the Second Draw PPP Loan are not applicable — and may not be applied to — PPP loans;

(v) Declare that the SBA's denial of Atlantic City's Second Draw PPP Loan Forgiveness Application and the SBA's determination that Atlantic City was not eligible for the Second Draw PPP Loan was conducted without observance of procedure required by law;

(vi) Declare that the SBA's denial of Atlantic City's Second Draw PPP Loan Forgiveness Application and the SBA's determination that Atlantic City was not eligible for the Second Draw PPP Loan were not supported by substantial evidence;

(vii) Declare that Atlantic City was eligible for the Second Draw PPP Loan and thus, qualified/qualifies for complete forgiveness of the Second Draw PPP Loan;

(viii) Vacate and reverse the SBA's final loan review decision denying forgiveness of Atlantic City's Second Draw PPP loan and the OHA decision denying Atlantic City's administrative appeal;

(ix)  Order the SBA to fully forgive Atlantic City's Second Draw PPP Loan;

(x)   Award Atlantic City its attorneys' fees and costs; and

(xi)  Grant all other appropriate relief just and proper in the premises.


## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Melissa Sarsten Polito as trial counsel in this matter.

Dated: Short Hills, New Jersey
       December 5, 2024

DENTONS US LLP

By: _____

Melissa Sarsten Polito, Esq.
101 JFK Parkway
Short Hills, NJ 07078-2708
Tel: (973) 912-7162
melissa.sarstenpolito@dentons.com

[and]

**DENTONS BINGHAM
GREENEBAUM LLP**
Chelsea Granville Reed (*pro hac vice*
forthcoming)
chelsea.granvillereed@dentons.com
Kristin McCall (*pro hac vice*
forthcoming)
kristin.mccall@dentons.com
101 South Fifth Street, Suite 3500
Louisville, Kentucky 40202
Tel: (502) 589-4200
Fax: (502) 540-2169

*Attorneys for Plaintiff*

23

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

I certify under penalty of perjury of the laws of the United States of America, that the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding.

Dated:    December 5, 2024

/s/Melissa Sarsten Polito
Melissa Sarsten Polito, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on this 5th day of December, 2024 on all CM-ECF Counsel of Record and via electronic mail on all parties listed below:

Respectfully submitted,

Dated: Short Hills, New Jersey          DENTONS US LLP
       December 5, 2024

By:     /s/ Melissa Sarsten Polito
        Melissa Sarsten Polito, Esq.
        101 JFK Parkway
        Short Hills, NJ 07078-2708
        Tel: (973) 912-7162
        melissa.sarstenpolito@dentons.com

        *Attorneys for Plaintiff*