TODD BLANCHE
U.S. Deputy Attorney General
JORDAN FOX
Chief of Staff & Associate Deputy
Attorney General
Special Attorney
KEVIN J. MAGGIO
Assistant United States Attorney
401 Market Street, 4th Floor
Camden, NJ 08101
(973) 986-6708
Kevin.Maggio@usdoj.gov
*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC CITY LINEN SUPPLY, LLC, | Hon. Edward S. Kiel, U.S.D.J. |
| | Hon. Ann Marie Donio, U.S.M.J. |
| *Plaintiff,* | Civil Action No. 24-10937 (ESK) (AMD) |
| v. | |
| U.S. SMALL BUSINESS ADMINISTRATION *and* KELLY LOEFFLER, *in her official capacity as the Administrator of the U.S. Small Business Administration,* | |
| *Defendants.* | |

## BRIEF IN SUPPORT OF FEDERAL DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On the Brief:

KEVIN J. MAGGIO
Assistant United States Attorney

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF THE CASE ................................................................................ 3

    A.    SBA and its Section 7(a) Loan Program ..................................... 3

    B.    The CARES Act and Paycheck Protection Program ................. 4

    C.    Review and Forgiveness of PPP Loans ..................................... 5

    D.    AC Linen's Second Draw PPP Loan .......................................... 7

    E.    Procedural History ....................................................................... 9

STANDARD OF REVIEW .................................................................................. 10

ARGUMENT ..................................................................................................... 12

    I.    THE CARES ACT AUTHORIZED SBA TO APPLY ITS PRIMARY INDUSTRY METHODOLOGY TO DETERMINE A BORROWER'S ELIGIBILITY FOR THE AFFILIATION WAIVER ..................................... 12

    II.    SBA'S FLRD IS REASONABLE AND SUPPORTED BY SUBSTANTIAL EVIDENCE ............................................................... 20

    III.    SBA REASONABLY EXPLAINED ITS DECISION ................................... 25

CONCLUSION.................................................................................................... 27

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................. 10

*Biestek v. Berryhill*,
587 U.S. 97 (2019) ................................................................... 11

*Christ the King Manor, Inc. v. Secretary U.S. Department of Health & Human Services*,
730 F.3d 291 (3d Cir. 2013)..................................................... 26

*Das v. Commissioner Social Security*,
No. 22-3229, 2023 WL 6157395 (3d Cir. 2023) ...................... 23

*Department of Homeland Security v. Regents of University of California*,
591 U.S. 1 (2020) ..................................................................... 25

*Dia v. Ashcroft*,
353 F.3d 228 (3d Cir. 2003)..................................................... 11

*Dimter v. Commissioner Social Security*,
No. 24-1350, 2024 WL 4986935 (3d Cir. Dec. 5, 2024) .......... 23

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) ................................................................. 11

*Gardner v. Grandolsky*,
585 F.3d 786 (3d Cir. 2009)..................................................... 26

*Gonzalez v. Secretary of Department of Homeland Security*,
678 F.3d 254 (3d Cir. 2012)..................................................... 24

*In re Gateway Radiology Consultants, P.A.*,
983 F.3d 1239 (11th Cir. 2020) ............................................... 12

*In re Yellow Corp.*,
152 F.4th 491 (3d Cir. 2025) ................................................... 11

*Ingram v. Experian Information Solutions, Inc.*,
83 F.4th 231 (3d Cir. 2023)..................................................... 18

*Kamara v. Attorney General of United States*,
420 F.3d 202 (3d Cir. 2005)..................................................... 26

*Loper Bright Enterprises v. Raimondo,*
 603 U.S. 369 (2024) ................................................................. 10

*Lorillard v. Pons,*
 434 U.S. 575 (1978) ................................................................. 17

*Medical Center Pharmacy v. Mukasey,*
 536 F.3d 383 (5th Cir. 2008) ................................................... 18

*Pharaohs GC, Inc. v. U.S. Small Business Administration,*
 990 F.3d 217 (2d Cir. 2021) .......................................... 12, 13, 17

*Shop Rite Inc. v. U.S. Small Business Administration,*
 No. 23-cv-456, 2024 WL 5183329 (W.D. La. Dec. 19, 2024) ......................... *passim*

*Shop Rite Inc. v. U.S. Small Business Administration,*
 No. 25-30028, 2025 WL 3188380 (5th Cir. Nov. 14, 2025) .............................. 14, 15

*Sisco v. Commissioner Social Security,*
 840 F. App'x 685 (3d Cir. 2020) .............................................. 24

*Springfield Hospital, Inc. v. Guzman,*
 28 F.4th 403 (2d Cir. 2022) ...................................................... 5

*Van Buren v. United States,*
 593 U.S. 374 (2021) ................................................................. 16

*Williams v. Sullivan,*
 970 F.2d 1178 (3d Cir. 1992) ................................................... 11

**Statutes**

5 U.S.C. § 706(2) ................................................................. 10, 11

15 U.S.C. § 636(a) ..................................................................... 3

15 U.S.C. § 636(a)(36) ...................................................... *passim*

15 U.S.C. § 636(a)(37) ...................................................... *passim*

**Regulations**

13 C.F.R. § 121.101 ............................................................ 13, 14

13 C.F.R. § 121.103 ................................................................. 20

13 C.F.R. § 121.107 ................................................................. 14

13 C.F.R. § 121.201 ................................................................ 13, 14, 19, 22

13 C.F.R. § 121.301 ................................................................................ 21

## **Other Authorities**

Business Loan Program Temporary Changes; Paycheck Protection Program
    Second Draw Loans,
    86 Fed. Reg. 3712-01 (Jan. 14, 2021) .................................................. 20

Fed. R. Civ. P. 56(a) ........................................................................... 10

U.S. Census Bureau, NAICS FAQs,
    *available at* https://www.census.gov/naics/ ..................................... 18, 19

## **PRELIMINARY STATEMENT**

Congress created the Paycheck Protection Program ("PPP") to help small businesses and their employees at the outset of the COVID-19 pandemic and charged the U.S. Small Business Administration ("SBA") with the program's administration. PPP loans were issued by private lenders but guaranteed by SBA, and lenders rapidly distributed approximately $800 billion in potentially forgivable loans to businesses across the country before the PPP terminated in June 2021. Due to the exigency of the moment, borrowers were able to obtain loans in short order based on self-certifications. However, borrowers' eligibility for such loans was assessed when they subsequently applied for loan forgiveness, and SBA denied loan forgiveness to borrowers that it determined were ineligible for PPP loans in the first place.

That is what occurred here. Plaintiff Atlantic City Linen Supply, LLC ("AC Linen"), a linen supply service company, submitted a loan application in which it self-assigned itself a North American Industry Classification System ("NAICS") code beginning with 72, which applies to hotels, motels, and other types of hospitality and food-services businesses. In doing so, AC Linen attempted to avail itself of the Coronavirus Aid, Relief, and Economic Security Act's ("CARES Act") waiver of SBA's affiliations rules for businesses assigned a NAICS code beginning with 72 (the "Affiliation Waiver"). AC Linen received a $925,000 second draw PPP loan based on its application ("Second Draw PPP Loan").

When AC Linen applied for forgiveness, SBA denied the application upon concluding that AC Linen was ineligible to receive the loan in the first place.

SBA determined that AC Linen—either on its own or together with its affiliates— had more than 300 employees and therefore exceeded the applicable SBA size standards.   Moreover, SBA determined that AC Linen was not eligible for the Affiliation Waiver because its "primary industry" is linen supply service and, therefore, its proper NAICS code is 812331, not one beginning with 72.

AC Linen now challenges SBA's denial of its application for loan forgiveness. Specifically, AC Linen asserts that: (1) Congress did not grant SBA authority to reject a borrower's self-assigned NAICS code; (2) AC Linen appropriately self-assigned a NAICS code beginning with 72 and was therefore eligible for the Affiliation Waiver and its Second Draw PPP Loan; and (3) SBA failed to fully explain its reasoning for denying AC Linen's forgiveness application.

The Court should deny Plaintiff's motion for summary judgment (ECF No. 39) and grant summary judgment in favor of the Federal Defendants[1] under Federal Rule of Civil Procedure 56 for three reasons.   *First*, SBA acted in accordance with its statutory authority under the CARES Act when it applied its primary industry methodology to determine that AC Linen is primarily in the business of linen supply services and, therefore, is properly assigned NAICS code 812331, not one beginning with 72.   *Second*, SBA's determination that AC Linen is ineligible for loan forgiveness is reasonable and supported by substantial evidence.   SBA concluded, *inter alia*, that 99% of AC Linen's revenue is derived from cleaning services, and its 2019 profit and

---

[1] "Federal Defendants" collectively refers to the SBA and Kelly Loeffler in her official capacity as the Administrator of SBA.

loss statement revealed no revenue derived from categories that would be more indicative of a NAICS code beginning with 72.  *Third*, SBA reasonably explained its decision.

## STATEMENT OF THE CASE

The Federal Defendants provide a full recitation of the undisputed facts in their Statement of Material Facts Not in Dispute ("SOMF"), in accordance with Local Civil Rule 56.1(a), and incorporate the same herein.

### A.    SBA and its Section 7(a) Loan Program

SBA is a cabinet-level agency in the Federal Government with a mission "to help small business owners and entrepreneurs pursue the American dream" by providing "counseling, capital, and contracting expertise as the nation's only go-to resource and voice for small businesses."  Fed. Defs.' SOMF ¶ 1.  Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) ("Section 7(a)"), confers authority on SBA to make and guarantee general-purpose loans to eligible small businesses.  *Id*. ¶ 3. Under SBA's Section 7(a) program, participating private lenders initiate loans to small businesses and, when SBA agrees to guarantee the debt, the lender funds and services the loan.  *Id*. ¶ 4.

SBA regulations establish the eligibility requirements for Section 7(a) loans, including location, demonstrated need for credit, and particularly relevant here— size.  *Id*. ¶¶ 5-6.  To be eligible for a Section 7(a) loan, an applicant must be "small" under SBA regulations' size standards.  *Id*. ¶ 7.  SBA regulations' "size standards" turn, in part, on the "primary industry" in which a borrower operates, and SBA classifies industries using NAICS codes to determine the applicable size standard.

*Id*. ¶¶ 8-10.  SBA's regulations also include "affiliation" rules governing when related businesses are grouped together for purposes of applying its size standards. *Id*. ¶¶ 11-12.

### B.    The CARES Act and Paycheck Protection Program

The CARES Act was signed into law on March 27, 2020, "to provide emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic." *Id*. ¶ 13.  CARES Act § 1102(a)(2) established the PPP, a temporary expansion of SBA's pre-existing business-loan authority, by adding a new paragraph (36) to Section 7(a).  *Id*. ¶ 14.  Subparagraph 636(a)(36)(B) of Section 7(a) states that "[e]xcept as otherwise provided in this paragraph, the [SBA] may guarantee [PPP] loans under the same terms, conditions, and processes as [other] loan[s] made under" Section 7(a).  *Id*. ¶ 16.

The CARES Act sets forth the precise ways in which PPP loans differ from other Section 7(a) loans.  Pertinently, the CARES Act waived SBA's affiliations rules for businesses with fewer than 500 employees that are assigned a NAICS code beginning with 72, which includes hotels and motels, casino hotels, bed and breakfast inns, any other similar types of hospitality businesses, as well as full and limited-service restaurants, caterers, "drinking places," snack and nonalcoholic beverage bars, and other food service-related businesses (i.e., the Affiliation Waiver).  *Id*. ¶¶ 17-19.  Without that waiver, such businesses' loan eligibility would be assessed by counting both the business's employees as well as those of the business's affiliates. With the waiver, such businesses' loan eligibility would be assessed solely by counting the business's employees.

4

The PPP expired on August 8, 2020, but Congress reauthorized and extended the program to March 31, 2021, and added another $147.5 billion in loan authority, through the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("Economic Aid Act"). *Id.* ¶¶ 20-21. The Economic Aid Act also authorized SBA to guarantee so-called "second draw" PPP loans to certain businesses that obtained "first draw" PPP loans under the CARES Act, and to do so under the same terms and conditions as first draw loans except as the Economic Aid Act otherwise provided. *Id.* ¶ 22. Among other things, the Economic Aid Act limited eligibility for second draw PPP loans to business concerns with no more than 300 employees, absent a waiver. *Id.* ¶ 23.

Following the establishment of the PPP, approximately $800 billion in PPP loans were distributed by the time the program terminated in June 2021. *Id.* ¶ 24.

### C.    Review and Forgiveness of PPP Loans

"Eligible recipients" of PPP loans can obtain loan forgiveness on the portions of the loan used for certain enumerated purposes, such as payroll costs and payments for rent, utilities, and mortgage interest. *Id.* ¶ 25. The full principal amount and any accrued interest can be forgiven if, among other requirements, "the borrower uses all of the loan proceeds for forgivable purposes" and certain "employee and compensation levels are maintained." *Id.* ¶ 26.

"[F]orgiveness" of PPP loans "is neither automatic nor guaranteed." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 424 (2d Cir. 2022). A borrower must submit an application with supporting documentation to its lender to apply for forgiveness. *Id.* ¶ 27. If the lender determines that the loan should be forgiven, it

submits a request for payment to SBA. *Id*. ¶ 28. SBA then remits the appropriate amount to the lender—subject, however, to any SBA review. *Id*. ¶ 29.

Under Congress's directive to meet the immediate economic needs of PPP applicants as quickly as possible, SBA set forth a highly streamlined application and underwriting process for obtaining PPP loans. *See id*. ¶ 31. The simplified PPP loan application and underwriting process created a heightened risk of loans being erroneously approved by lenders. To maintain the program's fiscal integrity and "ensure that PPP loans are directed to the entities Congress intended" and "used for the purposes Congress required," SBA established a series of "procedures and criteria" through which it can, after the loans are disbursed, review a borrower's eligibility for a PPP loan, calculation of the loan amount, use of loan proceeds, and entitlement to loan forgiveness. *Id*. ¶ 32. If "SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application[,]" and in the event a borrower mistakenly received loan forgiveness, the SBA has reserved the right to claw back such loan forgiveness. *See id*.

If the SBA determines that a borrower's forgiveness application should be denied in whole or in part, the borrower can appeal that decision, known as a "Final SBA Loan Review Decision" or "FLRD," to SBA's Office of Hearings and Appeals ("OHA"). *Id*. ¶ 33. A borrower must exhaust this administrative appeals process before seeking judicial review of the FLRD." *Id*. ¶ 34. A borrower appealing an FLRD to OHA has the burden of proving that SBA committed a "clear error of fact or law" in issuing the FLRD. *Id*. ¶ 35. Discovery is not permitted; rather, OHA's review is

limited to (1) the administrative record that was before SBA when it issued the FLRD, (2) the borrower's appeal petition, (3) any response, reply, or supplemental pleading, and (4) "filings related to [an] objection to the administrative record." *Id.* ¶ 36. A "timely appeal by a PPP borrower of a [FLRD] extends the deferment period of the PPP loan until a final decision is issued" by OHA. *Id.* ¶ 37.

### D.    AC Linen's Second Draw PPP Loan

AC Linen submitted an application for its Second Draw PPP Loan to Zions Bancorporation, N.A. ("Zions Bank") on or about May 3, 2021, and its application included a self-assigned NAICS code of 721110. *Id.* ¶¶ 38-39. On May 7, 2021, Zions Bank approved AC Linen for its Second Draw PPP Loan in the amount of $925,000.00 and disbursed the loan proceeds to AC Linen on May 13, 2021. *Id.* ¶¶ 40-41. On or about March 16, 2022, AC Linen submitted an application to Zions Bank for forgiveness of its Second Draw PPP Loan, and Zions Bank issued a decision forgiving the full amount of the loan on March 18, 2022. *Id.* ¶¶ 42-43. SBA informed AC Linen that it was reviewing its application and sought additional documentation from AC Linen on June 1, June 22, July 6, and August 11, 2022. Pl.'s SOMF ¶ 34.

On October 27, 2022, SBA issued its initial FLRD denying AC Linen's application for forgiveness of its Second Draw PPP Loan. Fed. Defs.' SOMF ¶ 44. AC Linen appealed that initial FLRD to OHA on November 28, 2022 ("First OHA Appeal"), and SBA subsequently requested to withdrew its initial FLRD. *Id.* ¶¶ 45-46. SBA moved to dismiss the First OHA Appeal on consent on January 27, 2023, and OHA granted that motion. *Id.* ¶¶ 47-48.

On March 16, 2023, SBA issued its second FLRD denying AC Linen's application for forgiveness of its Second Draw PPP Loan. *Id.* ¶ 49. "After review of the documentation provided" by AC Linen, "SBA conclude[d] [that AC Linen], or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards[,]" and consequently was ineligible for its Second Draw PPP Loan. *Id.* ¶ 50.

Specifically, SBA validated that AC Linen is just one of 25 entities within the "Christopher Kane et al" family, which has a total aggregate of 1680 employees. *Id.* AC Linen and two of its affiliates, United Laundry Services, LLC and Royal Hospitality Services, LLC, applied for second draw PPP loans but "contain 692 employees out of the total aggregate of 1680, leaving them ineligible due to exceeding the maximum allowed of 300 employees." *Id.*

SBA further concluded that AC Linen was "ineligible for a NAICS 72 [affiliation] waiver because they are not a hotel or restaurant, but [a] linen service compan[y]" that is properly assigned NAICS code 812331 and therefore "does not qualify for any waivers." *Id.* It reached that conclusion because AC Linen's profit and loss statements show that "99% of [its] income is derived from cleaning" and "there was no revenue attributed to 'Room' or 'Food & Beverage' categories or 'Hotel management' or 'Hotel Employees' that would be more indicative to a NAICS 72." *Id.* Moreover, "ETRAN, Secretary of State [websites,] and Borrower['s] website[] confirm[] [that AC Linen is a] Linen Supply Service compan[y]." *Id.* It "provides services to the hospitality industry, but it . . . is not in the hospitality industry." *Id.*

8

SBA ultimately determined that forgiveness of the Second Draw PPP Loan "in the amount of $0.00" was appropriate.  *Id*. ¶ 51.

AC Linen filed an appeal of SBA's second FLRD with OHA on or about April 18, 2023.  *Id*. ¶ 52.  On July 14, 2023, the administrative law judge issued a decision affirming SBA's denial of AC Linen's application for or forgiveness of its Second Draw PPP Loan.  *Id*. ¶ 53.

### E.    Procedural History

On December 5, 2024, AC Linen filed its Complaint challenging SBA's FLRD denying its application for forgiveness of its Second Draw PPP Loan.  ECF No. 1.[2] The Federal Defendants answered the Complaint on February 21, 2025, ECF No. 17, and filed the Administrative Record ("AR") under temporary seal on May 30, 2025, ECF Nos. 24-36.  On July 3, 2025, the Court granted the parties' joint motion to seal the administrative record.  ECF No. 38.

AC Linen filed its motion for summary judgment on August 28, 2025 ("Pl.'s Opening Br.").  ECF No. 39.  On November 22, 2025, the Court granted the Federal Defendants' request on consent to reset and extend the schedule for the remainder of summary judgment briefing.  ECF No. 45.  The Federal Defendants now

---

[2] Two of AC Linen's affiliates who also applied for second draw PPP loans, United Laundry Services, LLC and Royal Hospitality Services, LLC, filed nearly identical complaints challenging SBA's decision to deny their loan-forgiveness applications. *See Royal Hospitality Servs., LLC v. U.S. Small Bus. Admin.*, No. 24-cv-13031 (D. Mass. Dec. 6, 2024), ECF No. 1 (Compl.); *United Laundry Servs., LLC v. U.S. Small Bus. Admin.*, No. 24-cv-516 (D. Haw. Dec. 6, 2024), ECF No. 1 (Compl.); *United Laundry Servs., LLC v. U.S. Small Bus. Admin.*, No. 24-cv-517 (D. Haw. Dec. 6, 2024), ECF No. 1 (Compl.).

submit this brief in support of their cross motion for summary judgment and opposition to AC Linen's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute concerning a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

The APA provides that courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights" or "without observance of procedure required by law . . . ." 5 U.S.C. § 706(2)(C)-(D). "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority . . . ." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). "Careful attention to the judgment of the [relevant agency] may help inform that inquiry." *Id.* at 412-13. "And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Id.* at 413.

The APA also provides that courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law[,]" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A) & (E). The arbitrary-and-capricious standard of the APA "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Courts "thus examine whether the agency gave 'a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *In re Yellow Corp.*, 152 F.4th 491, 502-03 (3d Cir. 2025) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Courts "do not review these policy-making decisions de novo, as courts are forbidden to 'substitute their own judgment for that of the agency.'" *Id.* at 503 (quoting *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 917 (2025)). Rather, the reviewing court's "'simply ensure that the agency has acted within a zone of reasonableness.'" *Id.* (quoting *FCC*, 592 U.S. at 414).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (citation omitted). "[T]he threshold for such evidentiary sufficiency is not high[,]" but is "more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "[T]he question whether an agency determination is supported by substantial evidence is the same as the question whether a reasonable fact finder could make such a determination based upon the administrative record." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003); *see also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d

Cir. 1992) ("Neither the district court nor [circuit] court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." (citation omitted)).

## **ARGUMENT**

### I. THE CARES ACT AUTHORIZED SBA TO APPLY ITS PRIMARY INDUSTRY METHODOLOGY TO DETERMINE A BORROWER'S ELIGIBILITY FOR THE AFFILIATION WAIVER

AC Linen contends that "SBA's determination that [it] was ineligible for a NAICS Code 72 waiver constitutes an error of law because it ignores the self-designated nature of NAICS Codes and contravenes the express language of the CARES Act." Pl.'s Opening Br. at 16-17. Thus, AC Linen asserts that SBA did not act in accordance with the law, was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right when it determined that AC Linen is a linen supply services company properly assigned NAICS code 812331, not a hotel or restaurant eligible for the Affiliation Waiver. *Id.* at 16-21. AC Linen is incorrect.

The PPP is not an entirely new loan program. *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1249 (11th Cir. 2020). Rather, the PPP "was added into the existing [Section] 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority." *Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 227 (2d Cir. 2021) (quoting *In re Gateway Radiology Consultants, P.A.*, 983 F.3d at 1256). In other words, the PPP's "foundation [is] in the . . . [Section] 7(a) loan program[,]" *id.*, 990 F.3d at 226, and the SBA "guarantee[s]

[PPP] loans **under the same terms, conditions, and processes** as [other] loan[s] made under" Section 7(a), 15 U.S.C. § 636(a)(36)(B) (emphasis added).[3]

The Section 7(a) program, 15 U.S.C. § 636(a), "is [] SBA's primary program for providing financial assistance to small businesses." *Pharaohs GC, Inc.*, 990 F.3d at 224. Among other criteria, a business's eligibility for a Section 7(a) loan depends on its size. 15 U.S.C. § 632(a)(2).[4] SBA's size standards vary by industry and are identified using NAICS codes. *See* 13 C.F.R. § 121.201.

The statute governing the Section 7(a) program does not provide a methodology for determining whether a particular business meets the size standards for loans under the program. *See generally* 15 U.S.C. § 636(a); *see also Shop Rite Inc. v. U.S. Small Bus. Admin.*, No. 23-cv-456, 2024 WL 5183329, at *5 (W.D. La. Dec. 19, 2024), *aff'd*, No. 25-30028, 2025 WL 3188380 (5th Cir. Nov. 14, 2025). "Accordingly, Congress empowered the SBA to establish rules and regulations governing the Section 7(a) small business loan program[,]" including regulations "set[ting] forth [] SBA's size eligibility regulations for the Section 7(a) small business loan program."

---

[3] *See also id.* § 636(a)(37)(B) ("Except as otherwise provided in this paragraph, [SBA] may guarantee [second draw PPP] loans to eligible entities under the same terms, conditions, and processes as [first draw PPP] loan[s]").

[4] *See* 13 C.F.R. § 121.101(a) ("SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for 'small business' concerns.").

*Shop Rite Inc.*, 2024 WL 5183329, at *5 (citing 15 U.S.C. §§ 633(d), 634(b)(6), 634(b)(7); *In re Gateway Radiology Consultants, P.A.*, 983 F.3d at 1248).

SBA's size eligibility regulations for Section 7(a) loans are set forth in subpart A of 13 C.F.R. part 121. They are based on "types of economic activity, or industry, generally under the [NAICS,]" 13 C.F.R. § 121.101(a), "apply to all SBA programs unless otherwise specified[,]" and include a table matching size standards to individual NAICS codes, *id.* § 121.201. SBA's standard operating procedures for Section 7(a) loans explain how it applies these industry size standards:

> The Applicant alone (without affiliates) must not exceed the small business size standard for the industry in which the Applicant is primarily engaged, and the Applicant when combined with its affiliates, must not exceed the size standard designated for either the primary industry (defined in 13 C.F.R. § 121.107) of the Applicant alone or the primary industry of the Applicant and its affiliates, whichever is higher.

Fed. Defs.' SOMF ¶ 12. Thus, under the SBA's regulations, "the applicable eligibility limit for a borrower under the Section 7(a) loan program is determined by a single NAICS code that reflects a borrower's primary business." *Shop Rite Inc.*, 2025 WL 3188380, at *5 (internal quotation marks and citation omitted). SBA's methodology for determining a borrower's primary industry is as follows:

> In determining the primary industry in which a concern or a concern combined with its affiliates is engaged, SBA considers the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets.

13 C.F.R. § 121.107.

As discussed above, "[i]nstead of creating an entirely new loan program, the CARES Act placed the PPP loan program under the pre-existing Section 7(a) loan program" and "provides that the SBA may guarantee PPP loans 'under the same **terms, conditions, and [processes]**' as a loan made under Section 7(a) '[e]xcept as otherwise provided.'" *Shop Rite Inc.*, 2024 WL 5183329, at *6 (quoting 15 U.S.C. § 636(a)(36)(B)); *see also* 15 U.S.C. § 636(a)(37)(B) (applying first draw PPP loan terms, conditions, and processes to second draw PPP loans, unless otherwise provided). "Those 'terms, conditions, and processes' governing the Section 7(a) program include the SBA's methodology for assigning an NAICS code based on a borrower's primary industry." *Id.*; *see also Shop Rite Inc.*, 2025 WL 3188380, at *4 (upholding on appeal SBA's use of its primary industry methodology to assess PPP loan eligibility). Accordingly, the CARES Act authorized SBA to use its primary industry methodology to assign AC Linen a NAICS code that reflects its primary industry and assess its eligibility for the Affiliation Waiver based on that NAICS code.

AC Linen's arguments do not alter this conclusion. AC Linen asserts that SBA lacks the authority to independently assess a borrower's NAICS code and that businesses "may appropriately self-assign a different or additional NAICS code at any time based on the evolving nature of its business." Pl.'s Opening Br. at 17.[5] It further asserts that "Congress did not authorize the SBA to use the borrower's 'primary industry' or to consider the factors listed in 13 C.F.R. § 121.107 to determine

---

[5] S*ee also id.* at 19 ("[N]owhere in the CARES Act did Congress authorize the SBA to engage in an independent assessment of a business' self-assigned NAICS Codes to determine its eligibility for a PPP loan.").

applicability of the [A]ffiliation [W]aiver." *Id*. at 19-20.  However, it points to no statutory provision that prohibits SBA from questioning the self-assigned NAICS code of a PPP loan applicant by using its primary industry methodology.  And for good reason, as AC Linen's position is contradicted by the plain language of the Affiliation Waiver.

Where the question is one of statutory interpretation, as here, "we start where we always do: with the text of the statute." *Van Buren v. United States*, 593 U.S. 374, 381 (2021).  The Affiliation Waiver, 15 U.S.C. § 636(a)(36)(D)(iv)(I), as altered for second draw PPP loans by § 636(a)(37)(E), states that it applies to "any business concern with not more than 300 employees that, as of the date on which the covered loan is disbursed, is assigned a [NAICS] code beginning with 72."  The text does not describe how SBA should apply the 300-employee size standard or how SBA should assign a NAICS code to a borrower.  *See id*.; *Shop Rite Inc.*, 2024 WL 5183329, at *6; Pl.'s Opening Br. at 18 (noting that "Congress did not include a definition of 'assigned' or any qualifying language" in the Affiliation Waiver).  It also does not expressly displace SBA's primary industry methodology in 13 C.F.R. § 121.107 for purposes of the Affiliation Waiver.  *See* 15 U.S.C. § 636(a)(36)(D)(iv)(I) (first draw PPP loans); *id*. § 636(a)(37)(E) (second draw PPP loans); *Shop Rite Inc.*, 2024 WL 5183329, at *6.  "Given this statutory silence," SBA reliance on its primary industry methodology to determine that AC Linen was ineligible for the Affiliation Waiver "is consistent with [the] statute." *Shop Rite Inc.*, 2024 WL 5183329, at *6.

16

As discussed, "[u]nder the pre-existing 'terms, conditions, and processes' of the Section 7(a) loan program" that the PPP is subject to, "SBA determines a borrower's NAICS code based on its primary industry, and this NAICS code determines which size limit applies for purposes of eligibility." *Id.* The Affiliation Waiver is "framed in terms of a size limit ([3]00 employees) and the assignment of an NAICS [] code" (i.e., a code beginning with "72"), so using the SBA's primary industry methodology to assign a NAICS code to the applicant is consistent with the statute. *See id.* Indeed, "[b]ecause Congress expressly legislated against the backdrop of an existing statutory and regulatory scheme, it may be presumed that Congress was aware of the pre-existing rules and regulations of the Section 7(a) program . . . when it placed the PPP under Section 7(a)." *Id.* (citing *Pharaohs GC, Inc.*, 990 F.3d at 227).[6]  In other words, "the context in which Congress created the [PPP] included longstanding regulatory limits on SBA loan eligibility," which "strongly suggests that Congress deliberately chose not to change the [SBA] Administrator's statutory discretion" with respect to those limits "other than [as] expressly identified in the CARES Act." *Pharaohs GC, Inc.*, 990 F.3d at 227. Simply put, Congress did not disturb SBA's authority to make eligibility findings based in part on its determination of a borrower's primary industry.

This conclusion is reinforced by the Affiliation Waiver's express reference to 13 C.F.R. part 121. It expressly waives the affiliation rules under 13 C.F.R. § 121.103

---

[6] *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." (citations omitted)).

for certain businesses (i.e., those properly assigned a NAICS code beginning with 72). 15 U.S.C. § 636(a)(36)(D)(iv)(I); *see also* § 636(a)(37)(E). However, it does not reference or alter the remaining eligibility rules in subpart A of 13 C.F.R. part 121, including the primary industry methodology of 13 C.F.R. § 121.107. *See id.*[7] Accordingly, "the SBA did not violate [the CARES Act] by using 13 C.F.R. § 121.107 to determine that [AC Linen's] 'primary industry' did not fall under an NAICS code beginning with '72.'" *Shop Rite Inc.*, 2024 WL 5183329, at *6.

In the absence of statutory support for its position that self-assigned NAICS codes cannot be questioned, AC Linen instead cites to NAICS FAQs published by the U.S. Census Bureau stating that "[t]here is 'no central government agency with the role of assigning, monitoring, or approving NAICS codes for establishments,' and 'no "official" way to have a company's NAICS Code changed.'" *Id.* at 17 (citing U.S. Census Bureau, NAICS FAQ Nos. 10-11, *available at* https://www.census.gov/naics/ (hereinafter, "Census Bureau FAQ")). AC Linen's selective quotation of these FAQs is misleading.

Census Bureau FAQ 10, *Who assigns NAICS codes to businesses and how?*, does state that there is no such central government agency, but in the very next sentence it advises that "[i]ndividual establishments ***are assigned NAICS codes by***

---

[7] "Where Congress creates specific exceptions to a broadly applicable provision, the 'proper inference is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.'" *Medical Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 395 (5th Cir. 2008) (quoting *United States v. Johnson*, 529 U.S. 53, 58 (2000)); *see also Ingram v. Experian Info. Solutions, Inc.*, 83 F.4th 231, 241 (3d Cir. 2023) (similar).

*various agencies* for various purposes using a variety of methods." Census Bureau FAQ 10 (emphasis added). After acknowledging that there is no "official" way to change a NAICS code, Census Bureau FAQ 11 states that "[v]arious Federal government agencies maintain their own directories of business establishments, and *assign classification codes* based on their own needs." Census Bureau FAQ 11 (emphasis added).

Moreover, it is unclear whether the Census Bureau's FAQs have any relevance to SBA's assignment of NAICS codes, as they advise that "[t]he U.S. Census Bureau has no formal role as an arbitrator of NAICS classification" and, "if you question the NAICS code contained on a form received from an agency other than the U.S. Census Bureau, you should contact that agency directly." Census Bureau FAQ 10. In any event, the U.S. Census Bureau, like the SBA, "assigns one NAICS code to each [business] establishment based on its primary activity (generally the activity that generates the most revenue for the establishment)" to accomplish its purposes. *Id*.

Finally, AC Linen's position that NAICS codes are entirely self-assigned and beyond questioning leads to absurd results when taken to its logical conclusion. Under its theory, a utility company engaged in "Geothermal Electric Power Generation," which must have 250 or fewer employees to qualify as "small," could unilaterally deem itself a "Sanitary Paper Product Manufactur[er]" by changing its NAICS Code from 221116 to 322291, which would allow it to qualify as "small" with 1500 or fewer employees. *See* 13 C.F.R. § 121.201. Similarly, a business engaged in "Sign Manufacturing" could double its applicable size standard simply by changing

its NAICS code from 339950 to 339992, the NAICS code for businesses primarily engaged in "Musical Instrument Manufacturing." *See id.* AC Linen's position renders SBA's size standards virtually null and void, as any business could simply self-assign itself NAICS code 312230 (Tobacco Manufacturing) and thereby subject itself to the most generous size standard available (i.e., 1500 or fewer employees). *See id.* SBA's size standards are clearly not intended to be so easily circumvented.

## II. SBA'S FLRD IS REASONABLE AND SUPPORTED BY SUBSTANTIAL EVIDENCE

SBA determined in the FLRD that AC Linen was ineligible for the PPP loan because "the Borrower business, or together with its affiliates, exceed[ed] the maximum allowable number of employees and the SBA small business size standards." Fed. Defs.' SOMF ¶ 50. SBA further determined that AC Linen was ineligible for the Affiliation Waiver because its primary industry was not Accommodation or Food Services. *Id.* Both determinations are reasonable and supported by substantial evidence.

In general, to be eligible for a second draw PPP loan, an employer, together with its affiliates, may not have more than 300 employees. 15 U.S.C. § 636(a)(37)(E)(ii).[8] In determining whether an affiliation exists, "SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships[.]" *Id.* § 121.103(a)(2); *see also id.*

---

[8] *See also* Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712-01, 3714 (Jan. 14, 2021) ("As with First Draw PPP Loans, in most cases, a borrower is considered together with its affiliates to determine eligibility for the PPP.").

§ 121.301(f) (2020) (setting forth bases for affiliation). As explained by SBA in the FLRD, the documents provided by AC Linen established that it was affiliated with Royal Hospitality Services, LLC and United Laundry Services, LLC (among many other entities) that collectively had 692 employees (out of a total aggregate of 1680). Fed. Defs.' SOMF ¶ 50; *see also* AC Linen Affiliate Addendum, Administrative Record ("AR") at USA 000103 (listing AC Linen's affiliates). AC Linen does not appear to dispute this determination.

Because AC Linen, together with its affiliates, exceeded the maximum allowable number of employees for a second draw PPP loan, SBA next considered whether AC Linen was eligible for the Affiliation Waiver. As described above, the Affiliation Waiver, 15 U.S.C. § 636(a)(36)(D)(iv)(I), as altered for second draw PPP loans by § 636(a)(37)(E), waives 13 C.F.R. § 121.103 provisions applicable to affiliations for applicant businesses with fewer than 300 employees that are assigned a NAICS code beginning with 72 as of the date the loan is disbursed.

Though AC Linen self-assigned itself a NAICS code beginning with 72—which is reserved for businesses whose primary industry is "Accommodation and Food Services," SBA determined that AC Linen's self-assignment was improper. Fed. Defs.' SOMF ¶ 50. Instead, SBA determined that AC Linen's primary industry was "Linen Supply"—not "Accommodation and Food Services"—thus making it ineligible for the Affiliation Waiver. *Id.* AC Linen does dispute this determination.

Substantial evidence in the record demonstrates that SBA's conclusion that AC Linen's primary industry is "Linen Supply," not "Accommodation and Food

Services," is reasonable.  To start, the FLRD was based in part on documents submitted by AC Linen that reflect that it historically assigned itself a NAICS code beginning with 81.[9]  For instance, AC Linen's parent company's 2018 IRS Form 1065 includes NAICS code 812320, "Drycleaning and Laundry Services."  AMCP Clean Subsidiary Holdco LLC ("AMCP") 2018 IRS Form 1065, AR at USA 003478;[10] *see also* 13 C.F.R. § 121.201.  The consultant AC Linen retained to opine on its PPP loan eligibility itself noted that AC Linen's parent company "has historically used a NAICS code beginning with 81 (specifically, 812332, Industrial Launderers)."  Brownstein Opinion, AR at US 000019.

Moreover, as noted in the FLRD, "99% of [AC Linen's] income is derived from cleaning[,]" and it  derived "no revenue attributed to 'Room' or 'Food & Beverage' categories or 'Hotel management' or 'Hotel Employees' that would be more indicative to a NAICS 72."  Fed. Defs.' SOMF ¶ 50.  AC Linen's 2019 profit and loss statement, which it submitted in support of its forgiveness application, reflects as much.  AC Linen 2019 P&L, AR at USA 003592–93.  It clearly shows that four categories account for 99% of AC Linen's revenue: Food & Beverage ***Cleaning***, Housekeeping ***Cleaning***, Uniforms ***Cleaning***, and Specialty Items ***Cleaning***.  *Id*., AR at USA 003592 (emphasis added).  There is no revenue attributed to any type of "management services."  *See id*.  Additionally, a letter submitted by Westin Hotels &

---

[9] *See also* Pl.'s SOMF ¶ 19 ("Historically, AC Linen was associated with NAICS Code 81, a code identifying industrial launderers.").

[10] *Compare id*. (including NAICS code 812320), *with* AMCP 2019 IRS Form 1065, AR at USA 003596 (including NAICS code 721110), *and* AMCP 2020 IRS Form 1065, AR at USA 003700 (including NAICS code 721110).

Resorts reflects that their hotels outsourced their "laundry needs" to one of AC Linen's affiliates—not their hotel management needs.  Westin Letter, AR at US 000070.

While AC Linen did not submit its 2018 profit and loss statement, there is nothing in the record to suggest that its business changed in any meaningful way over the years, or certainly by the time it submitted its 2019 profit and loss statement. Rather, it appears that AC Linen was aware of the Affiliation Waiver and was eager to take advantage of it.  *See* Brownstein Opinion, AR at US 000018–22.

In light of the foregoing, SBA concluded that AC Linen "provides services to the hospitality industry, but . . . is not in the hospitality industry." Fed. Defs.' SOMF ¶ 50.  Thus, SBA's determination that AC Linen is not eligible for the Affiliation Waiver because it was not in  the "Accommodation and Food Services" industry is reasonable and supported by substantial evidence.  *See, e.g.*, *Dimter v. Comm'r Soc. Sec.*, No. 24-1350, 2024 WL 4986935, at *2-3 (3d Cir. Dec. 5, 2024) (upholding agency decision where agency gave plaintiff's proffered expert "less than controlling weight" despite "evidence both supporting and contradicting [the expert's] opinion" because, "[w]hen the evidence points multiple ways, it is the role of the [agency] rather than the court to 'weigh the evidence' and draw conclusions" (quoting *Williams*, 970 F.2d at 1182)); *Das v. Comm'r Soc. Sec.*, No. 22-3229, 2023 WL 6157395, at *4 (3d Cir. 2023) (rejecting that the court's role is to weigh plaintiff's proffered evidence against the portions of the AR considered by the agency because the court's role is to "assess only whether, looking at the record as a whole, a reasonable mind might accept the

[agency's] evidence as adequate to support [its] conclusion"); *Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 688 (3d Cir. 2020) (rejecting challenge to agency's denial of disability insurance benefits because plaintiff fell "well short of demonstrating that any reasonable adjudicator would be compelled to reject [the agency's] finding" (citing *Nasrallah v. Barr*, 590 U.S. 573, 584 (2020))).

AC Linen's contentions do not compel a different result.  It argues that "SBA's narrow assessment of AC Linen's business" is flawed because it failed to consider evidence in the record demonstrating "that AC Linen provided the management and operating staff necessary to run the laundry and linen departments of the hotels themselves[,]" and that its 2019 profit and loss statement "does not fully reflect certain important aspects of AC Linen's business operations" because it "does not identify . . . the amount of revenue attributable to consultation and/or management services provided to hotel clients in connection with linen services."  *See* Pl.'s Opening Br. at 21-26.  However, the only support AC Linen provides for these contentions are self-serving affidavits prepared by its Vice President of Sales, Chief Financial Officer, and consultant.  *See id*. at 24-26.[11]  Consequently, AC Linen has failed to show that SBA's determination was unreasonable or that no reasonable fact finder could make the same determination based upon the administrative record.

---

[11] *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("As a general proposition, conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." (internal quotation marks omitted) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990)).

## III.    SBA REASONABLY EXPLAINED ITS DECISION

Finally, AC Linen's argument that SBA failed to fully explain its reasoning behind the FLRD, *see* Pl.'s Opening Br. at 26-27, likewise fails.  SBA does not dispute that agency decisions made "without explanation" may be arbitrary and capricious under the APA.  *See Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 28-33 (2020).  But that is not what occurred here.  SBA provided a thoughtful, detailed explanation for its decision that outlined the evidence it considered and why it reached the conclusion that it did.

*First*, SBA fully explained in the FLRD why it concluded that AC Linen exceeded the maximum allowable number of employees to qualify for its Second Draw PPP Loan.  Specifically, SBA considered that AC Linen is just one "of the 25 entities within the 'Christopher Kane et al' family," and that three of those entities—AC Linen, United Laundry Services, LLC, and Royal Hospitality Services, LLC—all applied for second draw PPP loans.  Fed. Defs.' SOMF ¶ 50.  Those three affiliated entities alone "contain 692 employees out of the total aggregate of 1680" employees in the "Christopher Kane et al" family.  *See id*.

*Second*, SBA fully explained in the FLRD why it concluded that AC Linen is not eligible for the Affiliation Waiver—because it merely "provides services to the hospitality industry[] but . . . is not in the hospitality industry."  *Id*.  Specifically, SBA analyzed, *inter alia*, AC Linen's 2019 profit and loss statement and determined that it supports NAICS code 812331.  *Id*.  It also considered the fact that one of AC Linen's clients stated that "it outsourced it's laundry needs" to AC Linen.  *Id*.  Moreover, SBA

detailed *how* it reached that conclusion—by using the primary industry methodology of 13 C.F.R. § 121.107. *Id.*

AC Linen hangs it hat on one paragraph of the FLRD in which SBA stated that "ETRAN, Secretary of State and Borrowers websites confirms the entities are Linen Supply Service companies. NAICS code 812331 (Linen and Supply) does not qualify for any waivers." Pl.'s Opening Br. at 27-28 (quoting FLRD, AR at USA 000058). Because SBA "did not provide any attachments or citation" to these materials, AC Linen claims SBA's decision is unclear. *See id.* at 28.

However, an agency's decision "need only set forth the basis of its administrative action 'with such clarity as to be understandable'; it need not provide a detailed statement of its reasoning and conclusions." *Kamara v. Attorney Gen. of U.S.*, 420 F.3d 202, 212 (3d Cir. 2005) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Thus, courts should "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)); *see also Gardner v. Grandolsky*, 585 F.3d 786, 790 (3d Cir. 2009) (same) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43); *Kamara*, 420 F.3d at 212 (upholding agency decision, though it "may not be a model of exposition, [because] it sufficiently sets forth the [Board of Immigration Appeals'] reasoning in a manner that permits a reviewing court to discern the 'basis of its decision'" (quoting *Dominguez v. Ashcroft*, 336 F.3d 678, 680 (8th Cir. 2003)).

Here, there is no question that SBA's decision can be "reasonably discerned" despite the lack of citations to these sources highlighted by AC Linen. Indeed, even if one were to remove the paragraph referencing those sources from the FLRD, the reasoning underlying SBA's decision to deny AC Linen loan forgiveness is entirely clear.

## **CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiff's motion for summary judgment (ECF No. 39) and grant summary judgment in favor of the Federal Defendants pursuant to Federal Rule of Civil Procedure 56.

Respectfully submitted,

TODD BLANCHE
U.S. Deputy Attorney General

JORDAN FOX
Chief of Staff & Associate Deputy
Attorney General
Special Attorney

By:    _s/ Kevin J. Maggio_
KEVIN J. MAGGIO
Assistant United States Attorney
*Attorneys for Federal Defendants*

Dated:  January 9, 2026