ROBERT FRAZER
United States Attorney
KEVIN J. MAGGIO
Assistant United States Attorney
401 Market Street, 4th Floor
Camden, NJ 08101
(973) 986-6708
Kevin.Maggio@usdoj.gov
*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC CITY LINEN SUPPLY, LLC,<br><br>      *Plaintiff,*<br><br>      v.<br><br>U.S. SMALL BUSINESS ADMINISTRATION *and* KELLY LOEFFLER, *in her official capacity as the Administrator of the U.S. Small Business Administration,*<br><br>      *Defendants.* | Hon. Edward S. Kiel, U.S.D.J.<br>Hon. Ann Marie Donio, U.S.M.J.<br><br>Civil Action No. 24-10937 (ESK) (AMD) |

## REPLY BRIEF IN FURTHER SUPPORT OF FEDERAL DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

On the Brief:

KEVIN J. MAGGIO
Assistant United States Attorney

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 2

    I.   SBA REASONABLY DETERMINED THAT AC LINEN'S PRIMARY INDUSTRY IS "LINEN AND SUPPLY" ........................................................ 2

    II.  SBA'S EXISTING TERMS, CONDITIONS, AND PROCESSES APPLICABLE TO SECTION 7(a) LOANS, INCLUDING ITS PRIMARY INDUSTRY METHODOLOGY, APPLY TO PPP LOANS ...................................................... 4

    III. SBA'S FINAL LOAN REVIEW DECISION IS SUPPORTED BY THE RECORD ................................................................................................... 8

CONCLUSION ...................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Diocese of Rochester v. U.S. Small Business Administration,*
    466 F. Supp. 3d 363 (W.D.N.Y. 2020) .......................................................................... 7

*DV Diamond Club of Flint, LLC v. Small Business Administration,*
    960 F.3d 743 (6th Cir. 2020) ................................................................................ 6, 7

*Forest View Rehabilitation & Nursing Center, LLC v. U.S. Small Business
    Administration,*
    No. 24-cv-1490, 2024 WL 5247837 (N.D. Ill. Dec. 30, 2024) ................................... 7

*In re Gateway Radiology Consultants, P.A.,*
    983 F.3d 1239 (11th Cir. 2020) ................................................................................ 5

*National Association of Home Builders v. U.S. Small Business Administration,*
    No. 20-cv-11780, 2021 WL 4458660 (E.D. Mich. Sept. 28, 2021) ............................ 6

*Pharaohs GC, Inc. v. U.S. Small Business Administration,*
    990 F.3d 217 (2d Cir. 2021) ..................................................................................... 5

*Shop Rite Inc. v. U.S. Small Business Administration,*
    No. 23-cv-456, 2024 WL 5183329 (W.D. La. Dec. 19, 2024) ................................... 4

*Shop Rite Inc. v. U.S. Small Business Administration,*
    No. 25-30028, 2025 WL 3188380 (5th Cir. Nov. 14, 2025) ..................................... 6

**Statutes**

15 U.S.C. § 636(a)(36) ................................................................................................. 4

15 U.S.C. § 636(a)(37) ................................................................................................. 4

**Regulations**

13 C.F.R. § 121.107 ..................................................................................................... 8

13 C.F.R. § 121.201 ..................................................................................................... 2

**PRELIMINARY STATEMENT**

AC Linen[1] puts forward three arguments in its Opposition and Reply Brief[2] that do little more than reiterate those asserted in its Opening Brief.[3] *First*, AC Linen contends that NAICS Code 721110—which applies to hotels and motels—reflects the core of its business operations. *Second*, it argues that the CARES Act did not delegate authority to SBA to reject a borrower's self-assigned NAICS code. *Third*, it argues that SBA's determination that AC Linen is primarily engaged in the linen and supply industry and therefore ineligible for the Affiliation Waiver is unsupported and not adequately explained. None of these arguments are supported by the language of the CARES Act or the evidence in the administrative record. Accordingly, the Court should deny Plaintiff's Motion for Summary Judgment (ECF No. 39) and grant summary judgment in favor of the Federal Defendants pursuant to Federal Rule of Civil Procedure 56.

---

[1] Defined terms used herein bear the same definitions used in the Federal Defendants' Brief in Support of Cross Motion for Summary Judgement and Opposition to Plaintiff's Motion for Summary Judgement (ECF No. 46-1) ("Fed. Defs.' Opening & Opp. Br.").

[2] "Plaintiff's Opposition and Reply Brief" refers to Plaintiff's Response in Opposition to Federal Defendants' Cross-Motion for Summary Judgment and Reply in Support of Motion for Summary Judgement (ECF No. 48).

[3] "Plaintiff's Opening Brief" refers to Plaintiff's Memorandum in Support of Motion for Summary Judgment (ECF No. 39-1).

## ARGUMENT

I.    **SBA REASONABLY DETERMINED THAT AC LINEN'S PRIMARY INDUSTRY IS "LINEN SUPPLY"**

The plain language of SBA's size standards states that NAICS Codes beginning with 72 are reserved for establishments that provide "Accommodation and Food Services," and NAICS Code 721110 is reserved for "Hotels (except Casino Hotels) and Motels."  13 C.F.R. § 121.201.  Nevertheless, AC Linen argues that because it provides linen supply services **to** hotels, **it too** must be in the accommodation industry. *See* Pl.'s Opp. & Reply Br. at 2-3.  In support of its position, AC Linen points to language from the NAICS Code Manual stating that NAICS Code 721110 establishments may also provide other services—like laundry services—and concludes that such language implicitly "recognizes that [because] laundry services are [so] essential to hotel operations[,]" entirely separate entities that solely provide laundry services to hotels qualify as NAICS Code 721110 establishments. *See id.* However, that a hotel may also provide laundry services does not transform AC Linen—a linen supply services company—into a hotel.  This logic would expand the accommodation industry indefinitely, as almost any business could be said to provide services to the accommodation industry.  For example, under AC Linen's logic, a taxi service could be considered part of the accommodation industry because it contracts with a hotel to deliver patrons to the hotel.

In any event, SBA's determination that AC Linen is primarily engaged in the business of linen supply services—not the accommodation industry—is supported by

2

the record.  As previously addressed,[4] the record reflects that AC Linen historically assigned itself NAICS Code 812331,[5]  the code for Linen Supply, and there is nothing in the record reflecting that AC Linen's business changed in any meaningful way over the years or by the time it submitted its application for its Second Draw PPP Loan. Moreover, 99% of AC Linen's revenue in 2019 was derived from cleaning services— not revenue sources that would typically be associated with the accommodation or food services industries.  *See* AC Linen 2019 P&L, AR at USA 003592–93.

That AC Linen's services were provided *to* hotels does not change the analysis, as it suggests.  Perhaps recognizing as much, AC Linen attempts to re-frame its linen supply services as "linen management services," and points to affidavits prepared by its officers and consultant to suggest that such services are so essential to a hotel's function as to constitute "hotel management services."  Pl.'s Opp. & Reply Br. at 3-5. However, even a letter from Westin Hotels & Resorts reflects that their hotels merely outsourced their "laundry needs" to one of AC Linen's affiliates—not their hotel management needs.  Westin Letter, AR at US 000070.

SBA's determination that AC Linen is primarily engaged in the Linen and Supply industry is both reasonable and supported by the record.  The Court should not disturb it.

---

[4] Fed. Defs.' Opening & Opp. Br. at 22-24.

[5] *Compare* AMCP 2018 IRS Form 1065, AR at USA 003478 (including NAICS code 812320), *with* AMCP 2019 IRS Form 1065, AR at USA 003596 (including NAICS code 721110), *and* AMCP 2020 IRS Form 1065, AR at USA 003700 (including NAICS code 721110).

**II.    SBA'S   EXISTING   TERMS,   CONDITIONS,   AND   PROCESSES APPLICABLE TO SECTION 7(a) LOANS, INCLUDING ITS PRIMARY INDUSTRY METHODOLOGY, APPLY TO PPP LOANS**

AC Linen again insists that the CARES Act does not authorize SBA to second-guess its self-assignment of NAICS Code 721110, and that the "congressional decision to relax loan requirements [through the CARES Act] was specifically intended to prevent the SBA from imposing its own internal terms, conditions, and processes traditionally applicable to Section 7(a) loans."  Pl.'s Opp. & Reply Br. at 6-7. In making this argument, AC Linen reads the Affiliation Waiver's[6] reference to "any business concern" in isolation rather than in harmony with the requirement that SBA "guarantee [PPP] loans *under the same terms, conditions, and processes* as [other] loan[s] made under" Section 7(a).  *See* 15 U.S.C. § 636(a)(36)(B) (emphasis added).[7]  As addressed previously,[8] it is essential to do so because the PPP was not created as a standalone program; instead, it was added into the pre-existing Section 7(a) loan program, albeit with several of that subsection's general eligibility requirements relaxed.[9]

---

[6] The Affiliation Waiver, 15 U.S.C. § 636(a)(36)(D)(iv)(I), as altered for second draw PPP loans by section 636(a)(37)(E), states that it applies to "any business concern with not more than 300 employees that, as of the date on which the covered loan is disbursed, is assigned a [NAICS] code beginning with 72[.]"

[7] *See also id.* § 636(a)(37)(B) ("Except as otherwise provided in this paragraph, [SBA] may guarantee [second draw PPP] loans to eligible entities under the same terms, conditions, and processes as [first draw PPP] loan[s]").

[8] Fed. Defs.' Opening & Opp. Br. at 7-15.

[9] *Shop Rite Inc. v. U.S. Small Bus. Admin.*, No. 23-cv-456, 2024 WL 5183329, at *6 (W.D. La. Dec. 19, 2024) ("Instead of creating an entirely new loan program, the CARES Act placed the PPP loan program under the pre-existing Section 7(a) loan program" and "provides that the SBA may guarantee PPP loans 'under the same

AC Linen's argument—that the "any business concern" language of the Affiliation Waiver should be read broadly and in isolation—has been rejected by panels of the Eleventh, Second, and Fifth Circuit Courts of Appeals. In *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020), a panel of the Eleventh Circuit considered the language in the CARES Act placing the PPP loan program within the pre-existing framework of the Section 7(a) loan program, including the rules and lending criteria promulgated by SBA in connection with that program. The Eleventh Circuit panel noted that the CARES Act expanded eligibility with respect to *some* borrowers but did not change other pre-existing eligibility and lending requirements. *See id.* at 1258.[10] It concluded that Congress had granted the SBA discretion to adopt the pre-existing Section 7(a) eligibility and lending criteria into the PPP, so long as the agency's actions did not conflict with the CARES Act. *Id.* at 1257. A panel of the Second Circuit reached a similar conclusion in *Pharaohs GC, Inc. v. United States Small Business Administration*, stating that "the CARES Act unambiguously gives the Administrator discretion to adopt the longstanding 'terms, conditions, and processes' of the 7(a) program" and that "'[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their

---

*terms, conditions, and* **[*processes*]**' as a loan made under Section 7(a) '[e]xcept as otherwise provided.'" (quoting 15 U.S.C. § 636(a)(36)(B))), *aff'd*, No. 25-30028, 2025 WL 3188380 (5th Cir. Nov. 14, 2025).

[10] *See also id.* at 1257 ("Congress knew how to suspend or render inapplicable to PPP loans the traditional § 7(a) requirements when it wanted to do so, and it did that with some of the requirements.").

context and with a view to their place in the overall statutory scheme.'" 990 F.3d 217, 226 (2d Cir. 2021) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

Most recently, a Fifth Circuit panel underscored that "Congress granted the SBA authority to administer the PPP loan program ***as it would Section 7(a) loans***." *Shop Rite, Inc. v. U.S. Small Bus. Admin.*, No. 25-30028, 2025 WL 3188380, at *6 (5th Cir. Nov. 14, 2025) (emphasis added). "Congress granted the SBA broad authority to administer the Section 7(a) loan program, including investigatory authority." *Id.* Because PPP loans are subject to the same terms, conditions, and processes applicable to Section 7(a) loans, the Fifth Circuit panel reasoned that, "as part of its loan review program, the SBA had authority to ensure Shop Rite was assigned the appropriate NAICS code." Accordingly, it concluded that SBA "did not exceed its congressionally delegated authority" when it rejected Shop Rite's self-certified NAICS code for purposes of determining its eligibility for the Affiliation Waiver. *Id.*

AC Linen primarily relies on two decisions in support of its argument that Congress intended the Affiliation Waiver to be read broadly and SBA was not empowered to "unilaterally implement its own lending restrictions" in connection with PPP loans: *DV Diamond Club of Flint, LLC v. Small Business Administration*, 960 F.3d 743 (6th Cir. 2020), and *National Association of Home Builders v. U.S. Small Business Administration*, No. 20-cv-11780, 2021 WL 4458660 (E.D. Mich. Sept. 28, 2021), *vacated on other grounds* No. 21-1765, 2023 WL 192239 (6th Cir. Jan. 13, 2023). *See* Pl.'s Opp. & Reply Br. at 8-10. Both decisions adopted an expansive

6

interpretation of the word "any" without addressing how their interpretations worked within the overall statutory scheme. Moreover, *DV Diamond Club* was not a final decision on the merits; rather, it was a decision in response to SBA's motion to stay a preliminary injunction. *See DV Diamond Club*, 960 F.3d at 745-47.

As such, *DV Diamond* and *National Association of Home Builders* represent a minority view and should not be followed by this Court. As one district court explained in rejecting this minority view: "Unlike those two decisions, but like several others, this Court finds significant that the PPP 'was added into the existing § 7(a) program' and thus its provisions should be interpreted in light of Congress' broad grant of authority to the SBA reflected in the existing statutory scheme." *Forest View Rehab. & Nursing Ctr., LLC v. U.S. Small Bus. Admin.*, No. 24-cv-1490, 2024 WL 5247837, at *8-9 (N.D. Ill. Dec. 30, 2024) (quoting *In re Gateway Radiology Consultants, P.A.*, 983 F.3d at 1256); *see also Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 375 (W.D.N.Y. 2020) (declining to following the *DV Diamond* court's reasoning because a court reviewing statutory language "'should not confine itself to examining a particular statutory provision in isolation'" (quoting *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007))).

In line with the majority view from panels of the Eleventh, Second, and Fifth Circuits, this Court should conclude that the existing terms, conditions, and processes applicable to Section 7(a) loans apply to PPP loans and, accordingly, the CARES Act authorized SBA to use its primary industry methodology to assign AC Linen a NAICS

7

code that accurately reflects its primary industry and assess its eligibility for the Affiliation Waiver based on that NAICS code.

## III.   SBA'S FINAL LOAN REVIEW DECISION IS SUPPORTED BY THE RECORD

AC Linen again argues that SBA's determination that AC Linen is primarily engaged in the linen and supply industry and therefore ineligible for the Affiliation Waiver is unsupported and not adequately explained.  *See* Pl.'s Opp. & Reply Br. at 14-19.   However, as previously discussed,[11] that conclusion was neither "unsupported," nor did it fail to consider the purported nuances of AC Linen's business, as AC Linen suggests.  Indeed, SBA looked beyond the label of AC Linen's purported business and reviewed its business records to assess its revenue sources. FLRD, AR at USA 000057-58.  SBA requested and received AC Linen's profit and loss statements from 2019 and noted that there were no entries for "'Room' or 'Food & Beverage' categories or 'Hotel management' or 'Hotel Employees'" or any other entries that are typical of a business in the accommodation or food service industry.  *Id.*

Put another way, SBA did not simply declare that AC Linen was not a "hotel" or "restaurant" and, therefore, assume that it was not in the accommodation or food service industry.  Instead, consistent with its primary industry methodology, SBA considered "receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year."  13 C.F.R. § 121.107; *see also* FLRD, AR at USA 000057-58.  Based on

---

[11] Fed. Defs.' Opening & Opp. Br. at 20-27.

this review, SBA reasonably concluded that AC Linen's revenue is derived primarily from cleaning services, not from hotel management services.

Finally, AC Linen suggests that SBA's determination in the FLRD was a "post-hoc rationalization" of its decision to deny AC Linen's application for loan forgiveness. *See* Pl.'s Opp. & Reply Br. at 17-19. The record establishes the opposite—SBA applied its primary industry methodology, as it would have if considering a Section 7(a) loan, and analyzed the documentation provided by AC Linen to reasonably determine that AC Linen did not qualify for the Affiliation Waiver.

## CONCLUSION

For the reasons set forth above and in the Federal Defendants' Cross Motion for Summary Judgement and Opposition to Plaintiff's Motion for Summary Judgement (ECF No. 46), the Court should deny Plaintiff's Motion for Summary Judgment (ECF No. 39) and grant summary judgment in favor of the Federal Defendants pursuant to Federal Rule of Civil Procedure 56.

Respectfully submitted,

ROBERT FRAZER
United States Attorney

By:    *s/ Kevin J. Maggio*
KEVIN J. MAGGIO
Assistant United States Attorney
*Attorneys for Federal Defendants*

Dated: April 9, 2026

9