**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ATLANTIC CITY LINEN SUPPLY, LLC,**<br>**Plaintiff,**<br>**v.**<br>**UNITED STATES SMALL BUSINESS ADMINISTRATION and KELLY LOEFFLER, in her official capacity as the Administrator of the U.S. Small Business Administration,**<br>**Defendants.** | **Case No. 24–cv–10937–ESK–EAH**<br><br>**OPINION** |

**KIEL, U.S.D.J.**

Plaintiff Atlantic City Linen Supply, LLC (AC Linen) applied for forgiveness of a loan it received from the U.S. Small Business Administration (SBA) in the wake of the COVID-19 pandemic. AC Linen believes it is entitled to the loan forgiveness but that the SBA erred by exceeding its authority in reclassifying AC Linen's self-assigned industry classification to one where loan forgiveness was not permitted. Because the SBA was authorized to reclassify AC Linen's industry classification in determining that AC Linen was not eligible for loan forgiveness, and because the Administrative Law Judge's (ALJ) decision was not arbitrary and capricious, summary judgment will be granted in favor of the SBA.

## I. BACKGROUND

The SBA, established by the Small Business Act of 1953, is tasked with "'aid[ing], counsel[ing], assist[ing], and protect[ing] insofar as is possible the interests of small-business concerns in order to preserve free competitive enterprise […] and to maintain and strengthen the overall economy of the Nation.'" *SBA v. McClellan*, 364 U.S. 446, 447 (1960). "The SBA's main way

of aiding small businesses is by financing and guaranteeing private loans" known as "Section 7(a)" loans. *Seville Indus., L.L.C. v. U.S. SBA*, 144 F.4th 740, 742 (5th Cir. 2025); *see also* 15 U.S.C. §636(a).

Following the outbreak of the COVID-19 pandemic in 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which expanded the SBA's lending authority through the Paycheck Protection Program (PPP). *See generally* 15 U.S.C. §§9001–34. The PPP was Congress's first loan program designed to keep small businesses afloat during the pandemic (First Draw PPP Loans). Businesses employing more than 500 employees were not eligible for First Draw PPP Loans. 15 U.S.C. §636(a)(36)(D)(i). But the CARES Act provided for an "Affiliation Waiver" that allowed businesses "assigned a North American Industry Classification System [(NAICS)] code beginning with 72" to bypass this size restriction:

> (iv) Waiver of affiliation rules
>
> During the covered period, the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility for a covered loan for--
>
> > (I) any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a [NAICS] code beginning with 72[.]

*Id.* §636(a)(36)(D)(iv).

When the CARES Act expired, Congress enacted the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act), which allowed the SBA to issue a second round of PPP loans (Second Draw PPP Loans). *See id.* §636(a)(37)(B); *United Laundry Servs., L.L.C. v. U.S. SBA*, Nos. 24–516, 24–517, 2026 WL 2049809, at *4 (D. Haw. July 15, 2026). The Economic Aid Act limited eligibility for Second Draw PPP Loans to businesses

with no more than 300 employees. *Id.* § 636(a)(37)(A)(iv). The Economic Aid Act had the same Affiliation Waiver for businesses with a NAICS code beginning with 72, with more than 300 employees. *Id.* § 636(a)(37)(E)(i).

## II. PROCEDURAL HISTORY

In April 2020, AC Linen applied for and received a First Draw PPP Loan. (ECF No. 1 (Compl.) ¶ 54.) It then applied for and received forgiveness for this loan. (*Id.* ¶ 55.)

On May 3, 2021, AC Linen applied for a Second Draw PPP Loan for $920,000. (*Id.* ¶ 59.) Its application was approved, and the funds were disbursed on May 13, 2021. (*Id.*) AC Linen applied for loan forgiveness on March 16, 2022. (*Id.* ¶ 63.) The SBA denied this request on October 27, 2022. (ECF No. 25 (Admin. Rcd. Pt. One) pp. 15–17.) The SBA explained that AC Linen alone "or together with [AC Linen's] affiliates, exceed[ed] the maximum allowable number of employees and the SBA small business size standards" and that AC Linen was "ineligible for a NAICS 72 wavier because they are not a hotel or restaurant, but [a] linen service compan[y]." (*Id.* pp. 15, 16.) AC Linen appealed to the Office of Hearings and Appeals (OHA) on November 28, 2022. (ECF No. 39–2 (AC Linen SOMF) ¶ 36.) Thereafter, the SBA withdrew its initial denial and moved to dismiss AC Linen's appeal, which was granted. (*Id.* ¶¶ 37, 38.)

The SBA then issued its Final Loan Review Decision (FLRD)—a second denial—on March 16, 2023. (Admin. Rcd. Pt. One pp. 57–59.) There, the SBA concluded that AC Linen could not qualify for NAICS Code 72 because it "provides services to the hospitality industry, but it … is not in the hospitality industry," citing to AC Linen's profit and loss statements, revenue sources, and a letter from a Boston hotel explaining its vendor relationship with AC Linen. (*Id.* p. 58.) AC Linen again appealed to the OHA. (AC Linen SOMF ¶¶ 40, 44; Admin Rcd. Pt. One pp. 37–56.) On July 14, 2023, the ALJ affirmed the SBA

decision and found that the FLRD was "not based on a clear error of fact or law." (AC Linen SOMF ¶ 49; ECF No. 36 (Admin Rcd. Pt. 12) p. 14.) The FLRD became final on August 14, 2023, (AC Linen SOMF ¶ 53) and AC Linen initiated this action on December 5, 2024. (Compl.)

AC Linen filed a motion for summary judgment (Motion) (ECF No. 39) and supporting brief (ECF No. 39–1 (AC Linen Mot. Br.)). Thereafter, defendants SBA and Kelly Loeffler (collectively, SBA) filed a cross-motion for summary judgment (ECF No. 46 (Cross Motion)) and supporting brief (ECF No. 46–1 (SBA Cross Mot. Br.)). AC Linen filed an opposition to the Cross Motion and reply in further support of the Motion (ECF No. 48 (AC Linen Reply Br.)), and the SBA filed a reply in further support of the Cross Motion (ECF No. 49).

## III. LEGAL STANDARD

The parties' cross motions for summary judgment seek judicial review under the Administrative Procedure Act (APA). "Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Tomasi v. Twp. of Long Beach*, 364 F. Supp. 3d 376, 389 (D.N.J. 2019), *aff'd*, 796 F. App'x 766 (3d Cir. 2020)). But "[w]hile summary judgment is the proper mechanism for APA cases like this one, the usual summary judgment standard does not apply." *Neto v. Thompson*, 506 F. Supp. 3d 239, 244 (D.N.J. 2020) (internal quotations omitted). Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (C), (E).

The "arbitrary and capricious" standard is narrow; "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Assn. of*

*U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Instead, "[the court's] only task is to determine whether the [agency] has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Balt. Gas & Elec. Co. v. NRDC, Inc.*, 462 U.S. 87, 105 (1983). The standard is highly deferential and presumes the agency's decision to be valid. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971); *see also FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (holding an agency action only need only be "reasonable and reasonably explained").

"[C]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). In doing so, courts may "seek aid from the interpretations of those responsible for implementing particular statutes." *Id* at 378. Even in the absence of statutory ambiguity, courts may refer to various statutory sections in their analysis. *Essintial Enter. Sols., LLC v. U.S. SBA*, 166 F.4th 380, 385 (3rd Cir. 2026) (recognizing a "misimpression that, in the absence of a specified ambiguity in the statutory definition, the court need not refer to various statutory sections cited by the SBA outside of the statutory definition" (internal quotations omitted)).

I review an agency's factual findings for substantial evidence. *Krasniqi v. Dibbins*, 558 F. Supp. 3d 168, 178 (D.N.J. 2021). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## IV. DISCUSSION

AC Linen argues that the SBA lacks authority to review and reassess a business's self-assigned NAICS code. (AC Linen Mot. Br. pp. 16–19.) It argues that the SBA cannot undertake its own primary industry analysis to

review a company's self-assigned NAICS codes designation to deny a business's eligibility for the Affiliation Waiver. (*Id.* pp. 19–21.) AC Linen also argues that the SBA acted arbitrarily and capriciously in failing to fully explain the FLRD's reasoning. (*Id.* pp. 26–28.)

The SBA argues that because the PPP program was administered under the existing Section 7(a) loan program, the PPP loans are subject to existing terms, conditions, and SBA authority. (SBA Cross Mot. Br. pp. 17–18.) And because the existing Section 7(a) program is silent about determining eligibility for loans by meeting size requirements, the SBA argues that Congress empowered the SBA to establish size eligibility regulations for PPP loans through NAICS codes reflecting a borrower's primary industry. (*Id.* p. 18.) The SBA further notes that Congress did not prohibit it from "questioning the self-assigned NAICS code of a PPP loan applicant by using its primary industry methodology." (*Id.* p. 21.) Accordingly, the SBA argues that its FLRD is reasonable, reasonably explained, and supported by substantial evidence. (*Id.* pp. 25–32.)

### A. <u>**The FLRD Does Not Contravene the CARES Act.**</u>

To be eligible for the Affiliation Waiver for its Second Draw PPP Loan, AC Linen must have (i) "employ[ed] not more than 300 employees" in combination with its affiliates, or (ii) been properly assigned an NAICS Code beginning with 72. 15 U.S.C. §§ 636(a)(36)(D)(iv), (a)(37)(E). The parties disagree on whether the SBA may apply its primary industry methodology to review borrowers' self-assigned NAICS codes in their applications for PPP loan forgiveness.

AC Linen argues that the SBA may not "second-guess or review a borrower's self-assigned NAICS Code." (AC Linen Reply Br. pp. 14–15.) AC Linen relies on two out-of-circuit district court cases. In *DV Diamond Club of*

*Flint, LLC v. U.S. SBA*, the court barred application of the SBA's "Ineligibility Rule" to the PPP program that excluded "sexually oriented businesses" from receiving SBA loans. 459 F. Supp. 3d 943, 958 (E.D. Mich. 2020), *appeal voluntarily dismissed*, 2023 WL 10406367 (6th Cir. Oct. 18, 2023). The court found that "the SBA may not apply to the PPP its historical limitation against supporting businesses of a 'prurient sexual nature,'" especially in light of the PPP's intention to broaden loan eligibility to "*any* business concern." *Id.*

In *National Ass'n of Home Builders v. U.S. SBA*, the SBA issued an interim final rule declaring certain "'[p]assive businesses owned by developers and landlords'" and "'[s]peculative businesses'" ineligible for PPP loans, despite Congress's intention to extend PPP loan eligibility to "any business concern." No. 20–11780, 2021 WL 4458660, at *9, 11 (E.D. Mich. 2021), *vacated and remanded on other grounds*, No. 21–1765, 2023 WL 192239 (6th Cir. 2023). The district court found the interim rules to exceed the SBA's statutory authority, especially since "Congress *ha*[d] expressly spoken" on the issue. *Id.* at *9.

Neither *DV Diamond* nor *National Ass'n of Home Builders* are helpful. Here, the relevant statute states that "except as otherwise provided … the [SBA] Administrator may guarantee [PPP] loans to eligible entities under the same terms, conditions, and processes as a [7(a) loan]." 15 U.S.C. §636(a)(36)(B). The PPP provisions reveal that "those 'terms, conditions, and processes' governing the Section 7(a) program include the SBA's methodology for assigning a business an NAICS code based on the borrower's primary industry." *United Laundry*, 2026 WL 2049809, at *11.

AC Linen does not argue it qualifies for an Affiliation Waiver under the Second Draw PPP Loan. (*See* AC Linen Mot. Br. pp. 16–28.) Instead, it argues that its self-assigned NAICS code must be accepted for the purposes of the Affiliation Waiver because Congress never explicitly authorized SBA to

reassess and reject the same. (*Id.* p. 17.) AC Linen further states that it properly assigned itself NAICS Code 721110 in reliance upon legal advice of a law firm "with extensive experience in the assessment of congressional legislation to engage in an independent analysis of AC Linen's eligibility for the PPP." (*Id.* p. 11.) It offers letters from its executive officers asserting that its services are "an extension of [] the services provided by a hotel and its management operations are a fundamentally integral component of a hotel's functionality." (*Id.* p. 25.)

The SBA argues that the PPP is not a new loan program and hence, it is subject to the same terms and conditions as regular Section 7(a) loans. (SBA Cross Mot. Br. p. 17.) The SBA treats the PPP provisions as a grant of authority "to use its primary industry methodology to assign [borrowers] a NAICS code that reflects its primary industry and assess its eligibility for the Affiliation Waiver based on that NAICS code." (*Id.* p. 20.) The primary industry methodology allows it to consider external factors, such as "the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year" to determine a borrower's eligibility for a Section 7(a) loan. 13 C.F.R. § 121.107.

I agree with the SBA. AC Linen's proposition that NAICS Codes are "entirely self-assigned and beyond questioning" would lead to "absurd results" that would "render SBA's size standards virtually null and void." (Cross Motion pp. 24–25.); *see also Pharaohs GC, Inc. v. U.S. SBA,* 990 F.3d 217, 227 (2nd Cir. 2021) (recognizing that if the Administrator is "unable to exclude certain businesses from the [PPP] … [it] would render several provisions of the CARES Act superfluous"). And PPP loans are Section 7(a) loans. Indeed, "[t]he CARES Act provides that the SBA may rely on Section 7(a) "terms, conditions, and processes" to guarantee PPP loans "except as otherwise

provided … [because] Congress clearly intended for the SBA to rely on its Section 7(a) loan framework." *Shop Rite, Inc. v. U.S. SBA*, No. 25–30028, 2025 WL 3188380, at *5 (5th Cir. Nov. 14, 2025), *cert. denied*, 146 S. Ct. 2157 (2026) (quoting 15 U.S.C. §636(a)(36)(B)); *see also In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020) ("[T]he PPP was not created as a standalone program but was added into the existing §7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority."). "Congress empowered the SBA to establish rules and regulations governing the Section 7(a) small business loan program." *United Laundry*, 2026 WL 2049809, at *11. The SBA therefore had the authority to review AC Linen's NAICS code in its loan forgiveness application under its primary industry methodology. *See* 15 U.S.C. §636(a)(36)(B); 13 C.F.R. §121.107.

### B. <u>The FLRD Is Not Arbitrary and Capricious.</u>

The SBA has "extraordinarily broad powers" to carry out and effectuate its Section 7(a) loans. *McClellan*, 364 U.S. 446 at 447. But it cannot use its authority in an arbitrary and capricious manner. For businesses to obtain a Section 7(a) loan—including PPP loans—they must satisfy criteria determined by the SBA. 15 U.S.C. §636(a)(36)(B). In this context, the SBA has set certain size requirements and a related Affiliation Waiver to which businesses become eligible for loans when they are "assigned a [NAICS] code beginning with 72." *Id.* §636(a)(36)(D)(iv). The SBA determines a borrower's primary industry by considering the factors in 13 C.F.R. §121.107; *see United Laundry*, 2026 WL 2049809 at *12–13 (finding that the SBA's denial of loan forgiveness based on application of its primary industry methodology was not arbitrary and capricious).

AC Linen notes that the SBA did not provide specific documents or directly cite from "ETRAN, Secretary of State[,] and Borrowers websites" cited in the FLRD. (AC Linen Mot. Br. p.27.) Because these sources are not in the

administrative record, AC Linen argues, the SBA failed "wholly failed to provide a rational connection between the facts found and the decision made." (*Id.*)

While noteworthy, this omission is not fatal. Here, the majority of the FLRD applies SBA's primary business methodology, citing to AC Linen's affiliates, profit and loss statements, and a letter from Westin Hotels and Resorts revealing that it outsourced its "laundry needs" to an AC Linen affiliate, not their "hotel management" needs. (Admin. Rcd. Pt. One pp. 57–58.)

There is no evidence that, prior to the PPP program, AC Linen used NAICS Code 72 as its primary industry. And AC Linen concedes that "[h]istorically, [it] was associated with NAICS code 81" and only began using NAICS code 72 on its 2019 tax returns. (AC Linen Mot. Br. p. 10; AC Linen SOMF ¶¶ 19, 21); *see also United Laundry*, 2026 WL 2049809, at *11 (finding that the SBA did not err in relying on evidence of the plaintiff's non-use of NAICS code 72 until its PPP loan application in assessing the plaintiff's eligibility for loan forgiveness). Moreover, AC Linen's 2019 profit and loss statement show that 99% of its income was "derived from cleaning," rather than other categories more "indicative [of] a NAICS 72." (Admin. Rcd. Pt. One p. 58.) There is no evidence that AC Linen provided accommodations, lodging, or food and beverage services. (*See generally* AC Linen Mot. Br. pp. 21–26.) Though AC Linen notes that 100% of its revenue was from hotel accounts in 2019, it is a stretch to characterize the business as providing "hotel management services." (*Id.* pp. 10–11.) The record shows that AC Linen is a vendor *to* hotels. It does not manage hotels. As the SBA correctly points out, there is a distinction between "providing services" to the hospitality industry and actually "being in" the hospitality industry. (Admin. Rcd. Pt. One p. 58.)

The SBA's main consideration when denying AC Linen's application for loan forgiveness was not the "ETRAN, Secretary of State[,] and Borrowers

websites"; rather, the SBA relied on applying its primary industry methodology. (*See id.*) Specifically, the SBA applied the 13 C.F.R. § 121.107 factors and determined that AC Linen was not a hotel or restaurant and thus was ineligible for a NAICS 72 waiver. (*Id.*)

In the July 14, 2023 decision (*see* Admin. Rcd. Pt. 12 pp. 3–14), the ALJ upheld the FLRD. Relying on a "deferential, clear error standard" (*id.* p. 14), the ALJ determined that there was conflicting evidence as to "whether [AC Linen] was assigned a NAICS Code beginning with 72 as of the day the loan was disbursed," and there was "sufficient evidence to support the FLRD's conclusion that [AC Linen] is not entitled to the Affiliation Waiver." (*Id.* p. 13.) The ALJ articulated a "rational connection between the facts found and the choice made," and AC Linen has failed to demonstrate that the ALJ's decision to uphold the FLRD was arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. 29 at 43.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion (ECF No. 39) will be DENIED, and defendants' cross-motion (ECF No. 46) will be GRANTED. An appropriate order accompanies this opinion.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: August 27, 2026